**Dean J. McDONALD, as Collection Agent for the Trustees of the National Electrical Industry Fund, Plaintiff-Appellee,**

v.

**HAMILTON ELECTRIC, INC. OF FLORIDA, Defendant-Appellant.**

No. 80–5723.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1982.

Allen M. Blake, Tampa, Fla., for defendant-appellant.

Albritton, Sessums & DiDio, David A. Townsend, Tampa, Fla., for plaintiff-appellee.

Before MORGAN, HILL and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

This appeal arises from a decision by the United States District Court for the Middle District of Florida, holding the appellant liable for failing to comply with a provision of a collective bargaining agreement requiring the contribution of 1% of an employer's gross payroll to the National Electrical Industry Fund (NEIF), an industry promotion fund.[1]  Appellant argues that it was not

---

1. Appellee, Dean J. McDonald, as Collection   Agent for the Trustees of the National Electri-

bound by the NEIF provision because it neither authorized the Florida West Coast Chapter of the National Electrical Contractors' Association (FWCC, NECA) to negotiate such a provision on its behalf nor ratified the NEIF. The district court held otherwise, finding that by virtue of letters of assent executed by the appellant, the FWCC, NECA was authorized to bind the appellant to the NEIF provision and that by accepting the benefits flowing from other provisions of the collective bargaining agreement and by signing the letters of assent during the term of the agreement, appellant ratified the NEIF provision. We disagree with the conclusions of the district court and accordingly reverse.

Appellant, Hamilton Electric, Inc., is a Florida corporation that engages in electrical contracting. At all times relevant to this case, appellant hired labor from local chapters of the International Brotherhood of Electrical Workers (IBEW) but was not an express party to a collective bargaining agreement with the IBEW locals. Instead, appellant executed letters of assent in which it agreed to adhere to the terms and conditions of the current collective bargain-

ing agreements between the local unions and the FWCC, NECA and authorized the FWCC, NECA to negotiate matters on its behalf pertaining to or amending the agreements. Appellant signed a Letter of Assent A for Local Unions # 915 Inside and # 915 Residential on May 6, 1974, a Letter of Assent B for Local Union # 941 Inside on November 1, 1976, and a letter of assent, which neither party was able to discover prior to trial, for Local Union # 308 Inside.[2] None of the collective bargaining agreements to which the appellant assented contained the NEIF provision.

Subsequent to the execution of these letters of assent, NECA and IBEW negotiated the NEIF provision and several other measures, all of which were adopted by the Board of Governors of NECA in October, 1976 and ultimately were incorporated into all existing collective bargaining agreements, effective July 1, 1977.

On March 7, 1977, appellant received copies of the modified collective bargaining agreements and immediately sent letters to the business managers of all the IBEW locals from which appellant hired its em-

cal Industry Fund, filed suit against appellant, Hamilton Electric, Inc. of Florida, in federal district court to compel contribution to the NEIF under § 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a).

**2.** Letters of assent are routinely submitted by IBEW locals to all contractors requesting union labor. Generally, the execution of a letter of assent is a prerequisite to obtaining such labor. The letters are of two varieties. Letter of Assent A, the short form agreement generally submitted to contractors, has no specific termination date. It states:

In signing this letter of assent, the undersigned firm does hereby authorize _____ as its collective bargaining representative for all matters contained in or pertaining to the current approved _____ labor agreement between the _____ and Local Union _____, IBEW. This authorization, in compliance with the current approved labor agreement, shall become effective on the ___ day of _____. It shall remain in effect until terminated by the undersigned employer giving written notice to the _____ and to the Local Union at least one hundred fifty (150) days prior to the then

current anniversary date of the aforementioned approved labor agreement.

Upon request, the union will provide a contractor with a Letter of Assent B, which calls for a specific termination date. A Letter of Assent B provides:

This is to certify that the undersigned employer has examined a copy of the current approved ___ labor agreement between _____ and Local Union _____, IBEW.

The undersigned employer hereby agrees to comply with all of the terms and conditions of employment contained in the above mentioned agreement and all approved amendments thereto. It is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto.

This letter of assent shall become effective for the undersigned employer on the ___ day of _____ and shall remain in effect until the ___ day of _____.

If the undersigned employer does NOT intend to renew this assent, he shall so notify the Local Union in writing at least sixty (60) days prior to the termination date.

ployees, stating that appellant was not a member of NECA, had no intention of becoming a member, and would not contribute to the NEIF. The letters also stated that appellant would comply with all other provisions of the collective bargaining agreements. In April, 1977, appellant executed a letter of assent which it revised to expressly repudiate the NEIF provision and FWCC's authority to act as its bargaining representative.[3] At no time did the appellant pay into the National Electrical Industry Fund. It did, however, continue to use labor from the IBEW local unions and adhere to all other terms and conditions of the collective bargaining agreements, including those provisions adopted at the same time as the NEIF. At trial, the district court held appellant liable for 1% of its gross payroll from July 1, 1977 until the appellant's contracts with the local unions had terminated.[4] This appeal followed.

### A. Authorization

The first issue before us is whether the district court erred in holding that the appellant authorized the FWCC, NECA to bind it to the NEIF provision by executing the letters of assent. In resolving this question, "we apply federal law and the precepts of national labor policy in the labor field, not state law relating to principal and agent in commercial transactions." *Teamsters Local Unions v. Braswell Motor Freight Lines, Inc.*, 392 F.2d 1, 9, *rehearing denied in part and granted in part*, 395 F.2d 655 (5th Cir. 1968).[5] *See e.g., Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). To determine the scope of authority given the FWCC, NECA, we must construe certain clauses of the letters of assent and collective bargaining agreements which the letters of assent incorporate by reference. "Of course, these clauses cannot be evaluated out of context or unmindful of the contract and industrial setting as a whole. However, unless there is patent ambiguity, the plain meaning of the words should generally be followed." *Sam Kane Packing Co., et al. v. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO*, 477 F.2d 1128, 1131 (5th Cir. 1973).

A careful reading of the letters of assent and the collective bargaining agreements to which the letters refer reveals that the NEIF provision falls beyond the scope of appellant's assent. The letters of assent are of two types. *See note 2 supra.* Letter of Assent A provides that "the undersigned firm does hereby authorize [FWCC] as its collective bargaining representative for all matters contained in or

---

3. The only letter of assent appellant executed after the adoption of the NEIF provision was a Letter of Assent B for Local Union 308, IBEW, which states:

    This is to certify that the undersigned employer has examined a copy of the current approved Residental Wireman's labor agreement between Hamilton Electric Inc. of Florida and Local Union 308, IBEW.

    The undersigned employer hereby agrees to comply with all of the terms and conditions of employment contained in the above mentioned agreement and all approved amendments thereto. It is understood that the signing of this letter of assent shall be as binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto. "*Delete any and all reference to National Electrical Contractors Assoc. (NECA) and Article VIII (Industry Fund) from the labor agreement*" see further.

    This letter of assent shall become effective for the undersigned employer on the 14 day of April, 1977 and shall remain in effect until the 31 day of August, 1978 (termination date).

    If the undersigned employer does NOT intend to renew this assent, he shall so notify the Local Union in writing at least sixty (60) days prior to the termination date. "*Further-Hamilton Electric Inc. of Florida is not nor do we intend to become members of National Electrical Contractors Association (NECA) nor do we intend to pay 1% of our gross labor payroll (Article VIII) to NECA.*"

    The business manager of the Local Union 308, IBEW approved this letter of assent.

4. The verdict against appellant totalled $3,716.34.

5. The Eleventh Circuit in *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) adopted as precedent the decisions of the former Fifth Circuit.

pertaining to the current approved ___ labor agreement between the [FWCC, N.E. C.A.] and Local Union ___, IBEW." Letter of Assent B states that "the undersigned employer hereby agrees to comply with all of the terms and conditions of employment contained in the above mentioned agreement and all amendments thereto." By executing these letters of assent, appellant agreed to be bound by any matter ·contained in the extant collective bargaining agreements as well as any changes negotiated by the FWCC, NECA pertaining to or amending the agreements. None of the collective bargaining agreements to which appellant expressly assented contained an NEIF provision. Thus, only if the NEIF provision *pertained to* or *amended* the assented-to collective bargaining agreements can we conclude that the appellant authorized the appellee to bind it to the NEIF provision.[6] To determine this, we must examine the scope of the assented-to collective bargaining agreements.

■ Article II of the collective bargaining agreements defines employer-union rights and states that "the employer recognizes the union as the exclusive representative of all its employees . . . for the purpose of collective bargaining in respect to wages, hours of employment and conditions of employment." Thus, the scope of the collective bargaining agreements was generally limited to mandatory subjects of bargaining. National Labor Relations Act § 8(d), 29 U.S.C. § 158(d). *See, e.g., N.L.R.B. v. Wooster Division of Borg-Warner Corp.*, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958); *Axelson, Inc., Subsidiary of U.S.A. v. N.L.*

*R.B.*, 599 F.2d 91 (5th Cir. 1979). That is not to say that the FWCC, NECA and local unions could not have adopted a permissive subject of bargaining and that the appellant could not have expressly assented to or ratified such a provision. In the absence of subsequent assent or ratification, however, the appellant could not be bound by the adoption of a permissive subject of bargaining not provided for by the assented-to labor agreements.

This court has never specifically addressed whether an "industry promotion fund," such as the NEIF, is a mandatory or a permissive subject of bargaining. Other courts and the NLRB, however, have consistently held that industry promotion funds do not qualify as mandatory subjects of bargaining.[7] *See, e.g., N.L.R.B. v. Sheet Metal Workers International Association, Local Union No. 38*, 575 F.2d 394 (2d Cir. 1978); *N.L.R.B. v. Local 264, Laborers' International Union of North America*, 529 F.2d 778 (8th Cir. 1976); *N.L.R.B. v. Detroit Resilient Floor Decorators Local Union No. 2265*, 317 F.2d 269 (6th Cir. 1963); *Local 80, Sheet Metal Workers*, 161 N.L.R.B. 229 (1966). We agree.

■ Section 8(d) of the National Labor Relations Act defines mandatory subjects of bargaining as those issues "with respect to wages, hours, and other terms and conditions of employment." Although § 8(d) "does not immutably fix a list of subjects for mandatory bargaining," the list is limited, in general terms, to "issues that settle an aspect of the relationship between the employer and employees" and that have

---

**6.** The appellee asserts that the scope of the authority given the FWCC, NECA by the letters of assent was plenary and not limited by the specific reference in the letters of assent to the extant collective bargaining agreements. It is a well-established rule, however, that a reference by the contracting parties to an extraneous writing makes the writing part of their agreement for the purposes specified. *Guerini Stone Co. v. P. J. Carlin Construction Co.*, 240 U.S. 264, 277, 36 S.Ct. 300, 306, 60 L.Ed. 636 (1916); *Lodges 743 and 1746, etc. v. United Aircraft*, 534 F.2d 422, 441 (2d Cir. 1975). *See Seymour v. Coughlin Co.*, 609 F.2d 346 (9th Cir. 1979). The letters of assent executed by appellant lim-

it the FWCC, NECA's authority as appellant's bargaining representative to those matters contained in, pertaining to, or amending the "current" labor agreement. Therefore, we reject appellee's contention and examine the collective bargaining agreements in order to ascertain the authority possessed by the FWCC, NECA by virtue of the letters of assent.

**7.** The appellee at oral argument conceded that the NEIF provision was not a mandatory subject of bargaining. Nevertheless, we think it important to fully discuss the issue because this court has not previously addressed it.

more than a speculative and insubstantial impact upon that relationship. *Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 178, 92 S.Ct. 383, 397, 30 L.Ed.2d 341 (1971); *Axelson, Inc., Subsidiary of U.S.A. v. N.L.R.B., supra* at 93. The Fifth Circuit has similarly characterized mandatory subjects of bargaining as issues that "benefit all of the members of the collective bargaining unit through encouraging the collective bargaining process and vitally affecting the relationship between the employer and employees." *Id.* at 94. Industry promotion funds, such as the NEIF, do not vitally affect the employer-employee relationship. *See Wagor v. Cal Kovens Construction Corp.*, 382 F.2d 813, 815 (5th Cir. 1967). Instead, the NEIF is primarily concerned with the relationship between the industry and the public and with the funding of FWCC and NECA activities.[8] In our judgment, the NEIF provision is not a mandatory subject of bargaining and therefore does not pertain to or amend a term contained in the assented to collective bargaining agreement. Thus, appellant did not authorize the FWCC, NECA to bind it to the NEIF provision by executing letters of assent prior to the adoption of that provision.

## B. Ratification

■ The district court also held as a matter of law that the appellant ratified the NEIF provision. A principal can ratify the unauthorized act of an agent purportedly done on behalf of the principal either expressly or by implication through conduct that is inconsistent with an intention to repudiate the unauthorized act. *See* Restatement (Second) of Agency §§ 82, 83

(1957); *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367, 369 (7th Cir. 1978); *Weber v. Towner County*, 565 F.2d 1001, 1008 (8th Cir. 1977); *Wagor v. Cal Kovens Construction Corp., supra*. The district court found that appellant ratified the NEIF provision by signing letters of assent during the terms of the collective bargaining agreements and by voluntarily seeking and accepting the benefits flowing from the agreements. But, as we held above, the letters of assent did not authorize the FWCC, NECA to bind the appellant to the NEIF provision and, therefore, cannot serve as a basis for finding the ratification of that provision. Nor can appellant be held to have ratified the unauthorized NEIF provision by continuing to adhere to and enjoy the benefits of the terms of the collective bargaining agreements to which it was contractually bound as a result of the previously executed letters of assent. Thus, we find the district court's rationale for holding that appellant ratified the NEIF provision erroneous.

■ On the contrary, the district court's findings of fact indicate that the appellant did not ratify the NEIF provision. On March 7, 1977, appellant notified the business managers of the IBEW locals that it would not comply with the NEIF provision. In April of 1977, appellant executed a letter of assent that explicitly rejected the NEIF provisions, as well as NECA's authority to act as appellant's bargaining representative. Moreover, appellant never contributed to the industry fund. Thus, we conclude that the appellant not only did not ratify the NEIF provision, it expressly repudiated the measure. *See Wagor v. Cal Kovens Construction Corp., supra.*[9]

8. Money paid by members of FWCC, NECA to the NEIF serves as their membership dues.

9. In *Wagor v. Cal Kovens Construction Corp., supra*, the Fifth Circuit addressed the issue of ratification of an industry promotion fund by an employer, who was not a member of an employers' association. Unlike the appellant, however, the employer in that case never designated the employers' association as its bargaining representative. This difference is not significant, however, because as we have already concluded, the appellant did not authorize the

appellee to negotiate the NEIF provision on its behalf. The contract negotiated by the employer in *Cal Kovens Construction Corp.*, though never reduced to writing, permitted the employer to use union labor so long as it paid the laborers the same wages and fringe benefits provided for by the master collective bargaining agreement. The Fifth Circuit rejected the appellant's contention that the employer should be held to have adopted the contract negotiated by the associations and to have breached its obligation to contribute to the industry fund on

For the above reasons, we hold that the district court erred in finding that the appellant authorized the appellee to bind it to the NEIF and that appellant subsequently ratified the provision. Accordingly, we RE-VERSE.

the ground that "[a]t no time did [appellee] deliberately enter into relations with the Carpenters' Union which were only consistent with the adoption of such contract." *Id.* at 815. The basis for the court's conclusion was three-fold: 1) the employer's separate agreement with the union contained no reference to the industry. fund; 2) neither the union nor its members had any interest in the fund; and 3) the employer never contributed to the fund. *Id.*

The same factors that lead the court in *Cal Kovens Construction Corp.* to conclude that the employer had not ratified the industry fund provision are present in this case. First, as we previously stated, the prior collective bargaining agreements did not contain the NEIF provision, and appellant never authorized the appellee to negotiate such a provision. Second, the NEIF does not vitally affect the interest of the union or its members and is not being vindicated for the benefit of either. And, finally, the appellant never contributed to the fund. In addition, the appellant in this case expressly repudiated the NEIF provision in the letters of March 9, 1977 that it sent to the business managers of the IBEW local unions and in the letter of assent that it executed in April, 1977. Thus, our holding that appellant did not ratify the NEIF provision is consistent with *Wagor v. Cal Kovens Construction Corp., supra.*