### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### George BLACK, an individual doing business as Rayel Electric Company and Rayel Enterprises, Inc., d/b/a Rayel Electric Co., Respondents.

No. 82–4233.

United States Court of Appeals, Fifth Circuit.

July 18, 1983.

Elliott Moore, Andrew F. Tranovich, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Joel J. Reinfeld, Houston, Tex., for respondents.

Before RUBIN, GARZA and WILLIAMS, Circuit Judges.

PER CURIAM:

This proceeding is a petition by the National Labor Relations Board for enforcement of an order finding respondents guilty of unfair labor practices. 29 U.S.C. § 160(e). The order found the Rayel Companies (Company) and their owner, George Black, had violated Section 8(a)(1) and (5), 29 U.S.C. § 158(a)(1), (5), by repudiating the collective bargaining agreement the company had with Local 716, International Brotherhood of Electrical Workers (Union) and by refusing to furnish the Union with information necessary to fulfill its duties as the collective bargaining representative of the Company's employees. We agree with the Board's finding that the pre-hire agreement[1] signed by the Company in January 1978 bound it to the terms of the 1977–79

---

1. Section 8(f) of the National Labor Relations Act, 29 U.S.C. § 158(f), allows construction industry employers and unions to enter into agreements setting the terms and conditions of employment for those hired by the employer without the union's majority status having first been established pursuant to § 9 of the Act, 29 U.S.C. § 159. The Act's authorization of these "pre-hire" agreements in the construction industry recognizes that the "uniquely temporary, transitory and sometimes seasonal nature of much of the employment" in this industry might, in the absence of such agreements, unduly hinder both unions seeking to organize, and employers needing to know the cost and availability of workers, in this industry. *Jim McNeff, Inc. v. Todd,* —— U.S. ——, 103 S.Ct. 1753, 1756, 75 L.Ed.2d 830 (1983). *See NLRB v. Local 103, International Association of Bridge, Structural and Ornamental Ironworkers*

*(Higdon),* 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978).

The pre-hire agreement entered into in the immediate case, "Letter of Assent-A," provided:

> In signing this Letter of Assent, the undersigned firm does hereby *authorize* the SOUTHEAST TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC., *as its collective bargaining representative for all matters contained in or pertaining to the current approved Inside Labor Agreement* between the SOUTHEAST TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC., and LOCAL UNION 716, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. This *authorization,* in compliance with the current approved Labor Agreement, shall

labor agreement between the Union and the National Electrical Contractors Association (NECA).[2] Further, we agree with the Board's conclusion that since the Company failed to provide the requisite notice to withdraw its designation of NECA as its bargaining representative prior to the expiration of the 1977–79 agreement, it was bound by the terms of the 1979–81 agreement as well.[3] We also conclude that the Board's finding that the Union had attained majority status among the Company's stable complement of employees in 1978 is supported by substantial evidence.[4] *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951). Hence, we affirm the Board's conclusion that the company could not unilaterally renounce the 1979–81 agreement. Accordingly, we grant enforcement of the Board's order running to the date of the expiration of the 1979–81 agreement. The Board's findings of fact and conclusions of law specifically cover only this time period.

From our reading of the Administrative Law Judge's Order of June 1981, as adopted by the Board, as well as from the represen-

tations made at oral argument, the Board's order apparently was intended to cover only the time up to the expiration of the contract in 1981. However, because of the passage of time since the issuance of the order, the order as written might arguably be read to extend its remedial requirements beyond the expiration of the 1981 agreement. Since the Board has not yet been presented with nor passed upon any claims which might be raised by the Union for the post-1981 agreement period, we do not speculate as to the propriety of any relief which might subsequently be imposed by the Board.[5] To the extent that the Board's order might be read to extend beyond the expiration of the 1979–81 agreement, we have no power to review the order. We grant enforcement of the Board's order in accordance with the limitation stated in this opinion.

ORDER ENFORCED.

---

become effective on the 1st day of June, 1977. It *shall remain in effect until terminated by the undersigned employer giving written notice* to the SOUTHEAST TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC., and to the LOCAL UNION *at least one hundred fifty (150) days prior to the then current anniversary date* of the aforementioned approved Labor Agreement. (emphasis added)

2. At oral argument, the Company conceded that it was bound by the 1977–79 labor agreement between the Union and NECA.

3. *Accord Nelson Electric v. NLRB,* 638 F.2d 965 (6th Cir.1981). Letter of Assent-A required at least 150 days notice prior to the expiration of the 1977–79 agreement, in writing to the Union and NECA, before the Company could withdraw its authorization of NECA as its collective bargaining representative. The 1977–79 Agreement expired on May 29, 1979. The company did not notify either the Union or NECA in writing of its intent to withdraw its authorization until after this expiration date, when it tendered notice to the Union in October 1979 and NECA in July 1980.

4. The Board found that majority status was obtained by February 17, 1978 or, at the latest,

by June 25, 1978. As far as this finding includes certain factual determinations, *i.e.,* counting union as opposed to non-union members and determining supervisory status, the Board's determination is amply supported by substantial evidence on the record as a whole. As far as this determination is based upon implicit findings of law, *i.e.,* that union membership in this case was conclusive of union support, the Board's determination is reasonable and consistent with the Act.

5. At oral argument, the Board stated that, to date, the Union had not filed any claims relating to the post-1981 agreement period. The Board speculated that were such claims presented, it would find that the Company was not bound by the subsequent agreement entered into between the Union and NECA, but that the Company remained obligated to bargain with the Union after the expiration of the 1979–81 agreement. *Cf. NLRB v. Haberman Construction Co.,* 641 F.2d 351 (5th Cir.1981) (en banc) (in concluding that in the case of "project-by-project" employers, majority status must be redetermined at each job site and is not presumed, the Court left open the question of whether a presumption of majority status might properly attach to a "stable workforce" employer). These speculations are not properly before us on appeal.