**LOCAL 257, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, et al., Plaintiffs,**

v.

**William J. GRIMM and Carolyn Grimm, d/b/a Grimm Electric, Defendants.**

**No. 84–1340C(B).**

United States District Court, E.D. Missouri, E.D.

June 28, 1985.

James I. Singer, St. Louis, Mo., for plaintiffs.

John W. Ellinger, Jefferson City, Mo., for defendants.

## MEMORANDUM AND OPINION EMBODYING FINDINGS OF FACT AND CONCLUSIONS OF LAW

REGAN, District Judge.

In this action tried to the Court, the trustees of five employee benefit trust funds seek to recover delinquent contributions to said funds (and to another fund) allegedly required to be made by defendants pursuant to collective bargaining agreements, together with liquidated damages, interest, attorney's fees, and costs.

■ Venue as to the claims of the trustees of the five trust funds is proper in this district because such funds are administered in this district. 29 U.S.C. § 1132. However, the other employee benefit fund, the National Electrical Benefit Fund (NEBF) is administered in Washington, D.C., so that unless waived, as we deem it to be with respect to said claim, venue in this district would be improper.

As of and prior and subsequent to October 12, 1977, the St. Louis Chapter, Central Missouri Division, National Electrical Contractors Association (Association) was the bargaining representative for its members on whose behalf from time to time it entered into collective bargaining agreements with Local Union 257, International Brotherhood of Electrical Workers (Local 257), the bargaining representative of various employees employed by electrical contractors in Central Missouri. Each of the bargaining agreements contain provisions for employer contributions to the six employee benefit funds.

Neither William J. Grimm nor his wife Carolyn Grimm were at any time members of the Association. However, as owner of Grimm Electric Company, a sole proprietorship doing business in Jefferson City, Missouri, Mr. Grimm signed a Letter of Assent[1] on October 12, 1977, which authoriz-

---

1. The full text of the Letter of Assent is as follows:

In signing this letter of assent, the undersigned firm does hereby authorize St. Louis

ed the Association to act as his bargaining representative "for all matters contained in or pertaining to the *current* approved inside labor agreement between the Association and Local Union 257." Plaintiffs allege that defendants failed to pay contributions allegedly owing by them during the period January, 1982 to June, 1984, the date suit was filed.

There is an entire want of evidence as to what specific matters were contained in the then "current" (that is, as of October 12, 1977) approved labor agreement. The only evidence as to its effective period is the affidavit of defendant William Grimm (which plaintiffs placed in evidence) wherein he states that the collective bargaining agreement to which he became bound by the Letter of Assent was for a two year period from March 1, 1977 through February 28, 1979, and from year to year thereafter unless changed or terminated as therein provided.

There is no evidence as to whether the 1977 collective bargaining agreement remained in effect after February 28, 1979 by virtue of the year to year provision, or if so, for what period of time. We do know, however, that whatever agreement may have been in effect in February, 1981 was superseded by an entirely new labor agreement between the Association and Local 257, complete within itself, which became effective March 1, 1981 for a period of two years, with the year to year provision [2], and that agreement was in turn superseded by subsequent, similar (but not identical), agreements in March, 1983 and March, 1984.

Plaintiffs' theory as asserted in their complaint is that by the Letter of Assent defendants authorized the Association to act as its collective bargaining representative in all matters pertaining to the labor agreement*s* between the Association and Local 257. Or, as counsel put it in his opening statement, the Letter of Assent bound Grimm Electric Company not only to the then current approved collective bargaining agreement but also "delegated to the (Association) Grimm Electric's bargaining rights *in the future*."

▪ We do not so read the Letter of Assent. No language therein relates to *any* collective bargaining agreement other than the one *then* current. The plural is nowhere used. To the contrary, emphasis is placed on the singular in narrowing the scope of the authority delegated to the Association. There is no reference, directly or indirectly, to any *future* labor agreements. Thus, the Association is authorized to represent the signer of the Letter of Assent only in all matters relating to the *current approved* labor agreement.

That the words "current approved" agreement in the context in which they are used could only mean the *then* current agreement which had *theretofore been approved* is made perfectly clear by the language which follows, namely, that the authorization shall become effective on October 12, 1977 "in compliance with the *current approved* labor agreeent." And by way of further emphasizing that the authorization pertains only to the *then* current labor agreement is the provision for termi-

Chapter, Central Missouri Division, NECA as its collective bargaining representative for all matters contained in or pertaining to the current approved inside labor agreement between the St. Louis Chapter, Central Missouri Division, National Electrical Contractors Association and Local Union 257, IBEW. This authorization, in compliance with the current approved labor agreement, shall become effective on the 12th day of October, 1977. It shall remain in effect until terminated by the undersigned employer giving written notice to the St. Louis Chapter, Central Missouri Division, NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date

of the aforementioned approved labor agreement.

2. It may reasonably be inferred from the bargaining history of the parties that they entered into a new collective bargaining agreement covering the two year period between March 1, 1979 and February 28, 1981. Whether this is so or not does not necessarily affect Grimm's liability, inasmuch as plaintiffs' claim is for contributions allegedly owing for the subsequent periods commencing January 1, 1982. We add that plaintiffs make no contention that the 1977 agreement was in effect in 1982.

nation of the authorization on 150 days notice "prior to the then current *anniversary date* of the *aforementioned approved* labor agreement." The only "aforementioned" agreement is the one in effect on October 12, 1977, the date of the Letter of Assent.

It follows that the authority granted by the Letter of Assent automatically ceased to exist no later and probably earlier than the effective date of the new 1981 labor agreement. The result is that defendants are not bound by any of the provisions agreed to by the Association in the 1981 and subsequent labor agreements.

■ That such is consistent with the intention of the drafter of the Letter of Assent is clear from the prefatory language of the 1981 agreement between Local 257 and the Association (and the comparable language in the 1983 and 1984 agreements) to the effect that such Agreement is applicable not only to the Association's members but "shall *also* apply to all firms and employers who sign [not 'have signed'] a Letter of Assent to be bound by *this* Agreement." Unquestionably, William Grimm never signed a Letter of Assent to be bound by the 1981, 1983 and 1984 Agreements or any of them. We add that even if there were any ambiguity in its language (and we find none), the Letter of Assent having been drafted by the Union and the Association, would be construed against them.[3]

■ Plaintiffs having failed to prove their claim based on the Letter of Assent by the preponderance of the evidence, they are not entitled to the entry of judgment in their favor. In view of the foregoing ruling, it is unnecessary to separately consider the claim asserted against Carolyn Grimm based on the contention that she jointly with William Grimm owned, operated or controlled Grimm Electric Company with the result that she, too, was bound by the Letter of Assent signed by her husband.

Nevertheless, we deem it desirable to make clear our finding that under any view of the preponderance of the credible evidence, Carolyn Grimm would not be liable to plaintiffs without regard to the merits of plaintiffs' claim against her husband.

Mrs. Grimm had and has no financial interest in the business and assets of Grimm Electric Company. As a good helpmate, she assisted her husband by performing the office work (secretarial, bookkeeping, billing and receptionist). However, she neither hired nor fired any employee, entered into contracts, borrowed money on its behalf, nor exercised any other control over the operation of the business, or participated in any managerial decisions, and there is no evidence that she had any authority to do so. All of her actions were done at the direction of her husband. Although Mrs. Grimm was not paid a salary for her work, it is equally true that she did not share in the profits (if any) of the business, except to the extent that as the wife of William she used part of his weekly draw to pay household and personal expenses. In our judgment Carolyn Grimm did no more than any good wife would do under the circumstances in assisting her husband. That is a far cry from having an ownership or partnership interest in the business or its assets and operations. The mere fact that Mrs. Grimm occasionally referred to "our" business or used the word "we" in reference thereto (as wives are frequently wont to do) does not suffice to negate the clear and convincing evidence that the business and its assets belonged solely to her husband as a matter of law. We add that this is not a case in which the union or the trustees were deceived and acted to their detriment in reliance on any representations of Mrs. Grimm. To the contrary, plaintiffs were fully aware that the only responsible employer and owner of the business was William Grimm. The attempt to tie in Mrs.

---

**3.** We find it unnecessary to rely on footnote 2 of the Letter of Assent which provides, inter alia, that "(t)he Local Union *must* obtain separate assent to *each agreement* the employer is assenting to." This provision refers to "each agreement", as distinguished from "each *type* of agreement."

Grimm is an afterthought solely because she is the wife of William and not a paid employee performing identical services.[4]

The foregoing Memorandum and Opinion constitutes our findings of fact and conclusions of law. Judgment will be entered for defendants in accordance herewith.

---

**4.** Plaintiffs have cited a group of cases to the effect that *dominant* corporate officers-stockholders may be held jointly liable with the corporation for pension fund contributions *owing by the corporation.* We fail to see the relevancy of these cases. Although Grimm Electric Company was, as of September, 1974, a corporation (of which William Grimm was the *sole* stock-

holder), it proved unsuccessful and its charter was forfeited on January 1, 1978 (when Mr. Grimm was operating the business as a sole proprietorship). The present case does not, however, involve any contributions allegedly owing by the corporation prior to or subsequent to the forfeiture.