**LOCAL 257, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, et al., Appellants,**

v.

**William J. GRIMM and Carolyn J. Grimm, Appellees.**

No. 85–1864.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 17, 1986.

Decided March 11, 1986.

James I. Singer, St. Louis, Mo., for appellants.

John W. Ellinger, Jefferson City, Mo., for appellees.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellants, the trustees of several employee benefit trust funds, appeal from the district court's dismissal of their action against appellees, William J. Grimm, and his wife, Carolyn Grimm (the Grimms). In their action, tried without a jury, appellants sought to recover delinquent contributions to the trust funds allegedly required by collective bargaining agreements, along with liquidated damages, interest, attorney's fees, and costs. In entering judgment for the Grimms, the district court found that they were not bound by the provisions of any of the labor agreements in question. *Local 257, International*

*Brotherhood of Electrical Workers v. Grimm,* 613 F.Supp. 157, 159–60 (E.D.Mo. 1985). We reverse the judgment of the district court and remand for entry of a judgment against William J. Grimm as set forth herein and for a determination of whether Carolyn Grimm was a partner or employer and thus bound by the agreements along with William Grimm.

## I. FACTS

Grimm Electric (Grimm Electric) was incorporated as an electrical contracting firm in Jefferson City, Missouri in 1974, with William and Carolyn Grimm as president and vice-president, respectively. The Grimms were also listed on the state registration report as the corporation's sole directors. In 1975 and 1976, Grimm Electric filed annual registration reports, signed by Carolyn Grimm, with the Missouri Secretary of State, but forfeited its corporate charter on January 1, 1978 for failure to file its 1977 annual registration report. After forfeiture, however, Carolyn and William Grimm continued to operate Grimm Electric as an electrical construction business.

In October 1979 all of the electricians of Grimm Electric became members of Local 257, International Brotherhood of Electrical Workers (Local 257), a labor union. The St. Louis Chapter, Central Missouri Division, National Electrical Contractors Association (NECA), a trade association representing electrical construction employers in eastern Missouri, engages in collective bargaining for employers with Local 257. One of the primary contractual obligations of an employer under the collective bargaining agreements negotiated between NECA and Local 257 is the payment of contributions to the employee benefit trust funds of which appellants are trustees. Neither William J. Grimm nor Carolyn Grimm was ever a member of NECA. As owner of Grimm Electric, however, William J. Grimm signed a document entitled "Letter of Assent-A" on October 12, 1977, which is the standard form used by the International Brotherhood of Electrical

Workers for the delegation of bargaining rights by employers. The Letter of Assent-A signed by William Grimm reads as follows:

In signing this letter of assent, the undersigned firm does hereby authorize St. Louis Chapter, Central Missouri Division, NECA as its collective bargaining representative for all matters contained in or pertaining to the current approved inside labor agreement between the St. Louis Chapter, Central Missouri Division, National Electrical Contractors Association and Local Union 257, IBEW. This authorization, in compliance with the current approved labor agreement, shall become effective on the 12th day of October, 1977. It shall remain in effect until terminated by the undersigned employer giving written notice to the St. Louis Chapter, Central Missouri Division, NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the aforementioned labor agreement.

The collective bargaining agreement between NECA and Local 257 in effect at the time William Grimm signed the Letter of Assent-A was to cover the two year period from March 1, 1977 through February 28, 1979, and from year to year thereafter unless changed or terminated as therein provided. The district court found that no evidence existed as to whether the 1977 collective bargaining agreement remained in effect after 1979, but that at any rate new labor agreements between NECA and Local 257 came into effect in March 1981, March 1983, and March 1984. *Grimm,* 613 F.Supp. at 159.

The parties have stipulated that from the time the Letter of Assent-A was signed until January 1, 1982, Grimm Electric paid trust fund contributions at the increased rates required by successive collective bargaining agreements negotiated between NECA and Local 257. From January 1, 1982 until February 28, 1984 Grimm Electric employed electricians doing both residential and commercial work, but did not report these employees to Local 257 or to

the trust funds. In fact, Grimm Electric filed monthly reports with the trust funds from January 1982 through June 1983 showing that the company had no employees. Grimm Electric stopped filing such reports in June 1983, after Carolyn Grimm phoned Local 257 to ask whether the company needed to file reports when it had no employees.

Appellants filed this suit in June 1984, seeking the contributions allegedly owed to the trust funds for the period from January 1982 until the filing of the suit. They alleged that the last sentence of the Letter of Assent served as an "evergreen clause," automatically renewing the employer's delegation of bargaining authority to NECA, unless and until the employer gave the required 150 days written notice of termination. The district court held, however, that by signing the Letter of Assent-A William Grimm only assigned bargaining rights for the labor agreement in effect at the time the Letter of Assent-A was executed. On appeal, appellants contend that the district court wrongly concluded that the Letter of Assent-A was not a continuing delegation of bargaining authority.

## II. INTERPRETATION OF LETTER OF ASSENT-A

■ In reviewing the district court's decision, we note that the interpretation of an unambiguous, written contract is a matter of law not subject to the "clearly erroneous" standard of review. *See Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 519 (8th Cir.) (quoting *Standard Title Insurance Co. v. United Pacific Insurance Co.*, 364 F.2d 287, 289 (8th Cir.1966)); *cert. denied,* — U.S. —, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *UAW, Local No. 716 v. General Electric Co.*, 714 F.2d 830, 832 (8th Cir.1983); *Barrett v. Safeway*

*Stores, Inc.*, 538 F.2d 1311, 1313 (8th Cir. 1976). At issue in this case, therefore, is whether the district court erred in interpreting the Letter of Assent-A to cover only the collective bargaining agreement then in effect. After careful review of the Letter of Assent-A, we conclude that the district court did so err.

■ Our conclusion that the Letter of Assent-A provides a continuous delegation of Grimm Electric's bargaining rights until proper termination is based on the wording of that document. In particular, our judgment rests on a reading of the last sentence of the Letter of Assent-A, the so-called evergreen clause: "It [the employer's delegation of bargaining authority] *shall remain in effect until terminated* by the undersigned employer giving written notice to [NECA] and to the Local Union at least one hundred fifty (150) days prior to the *then current* anniversary date of the aforementioned approved labor agreement (emphasis added)." We think it clear from these words that the employer's assignment of bargaining authority under the Letter of Assent-A is an ongoing delegation, ending only on formal termination. Were this delegation of authority to end concomitantly with the collective bargaining agreement in effect at the time of execution of the Letter of Assent-A, no need would exist for such a termination provision. Further, contrary to the Grimms' assertion that the document does not refer to any future collective bargaining agreements, the phrase "then current" plainly points to whatever agreement may be in existence when the delegation is terminated at a future point in time. Our reading of the Letter of Assent-A is bolstered by decisions of other circuit courts interpreting the same language.[1] *See*

---

1. We do not view the Eleventh Circuit's holding in *McDonald v. Hamilton Electric, Inc.*, 666 F.2d 509, 512–13 and n. 6 (11th Cir.1982), as contrary to our determination. At issue in *McDonald* was whether various letters of assent signed by a company bound it to an industry promotion fund provision subsequently negotiated by NECA and the labor union, when no such provision had existed in the collective bargaining agreements to which the company had expressly assented. The court held that because the company had authorized NECA as its bargaining representative only "for all matters contained in or pertaining to the current approved" labor agreement, the company "could not be bound by the adoption of a permissive subject of bargaining not provided for by the assented to labor agreement." 666 F.2d at 512–13. In the

*NLRB v. Black,* 709 F.2d 939, 940–41 (5th Cir.1983) (per curiam); *Nelson Electric v. NLRB,* 638 F.2d 965, 967–68 (6th Cir.1981) (per curiam); *Local 2, International Brotherhood of Electrical Workers v. Gerstner Electric, Inc.,* 614 F.Supp. 874, 876 (E.D.Mo.1985) ("[T]he only reasonable interpretation of defendant's Letter of Assent is that it authorizes the Missouri Valley Chapter to bargain for defendant under *whichever* collective bargaining contract is currently approved until defendant terminates authorization") (Emphasis in original). *Cf. Arco Electric Co. v. NLRB,* 618 F.2d 698, 699 (10th Cir.1980) (In discussing the difference between the standard letters of assent "A" and "B," the court states that the "A" assent continues authorization until termination).

■ In addition to concluding that the Letter of Assent-A provides a continuous delegation of Grimm Electric's bargaining rights until proper termination, we also hold that Grimm Electric did not properly terminate that delegation and is therefore liable for the missed payments to the trust funds. We find no merit in the Grimms' argument that Grimm Electric was a party to a prehire agreement. Even assuming *arguendo* that Grimm Electric was bound to a prehire agreement, mere noncompliance with the contract does not in itself suffice to establish repudiation. *Contractors Health & Welfare Plan v. Harkins Construction & Equipment Co.,* 733 F.2d 1321, 1326 (8th Cir.1984). Further, the letter dated November 16, 1983 sent by William Grimm to Local 257 did not serve to cancel the labor agreement effective February 29, 1984 as the Grimms allege. Even assuming the letter was sent on November 16, 1983, it fell short of fulfilling the termination procedure set out in the Letter of Assent-A, which called for written notice by the employer to NECA and Local 257 at least 150 days prior to the anniversary date of the labor agreement, which in this case would be February 28, 1984. The Grimms had no right to cancel the labor agreement, which was between NECA and Local 257.

## III.  CONCLUSION

■ In conclusion, we reverse the judgment that Grimm Electric was not subject to the provisions of the collective bargaining agreements after December 1981. On remand the district court should determine whether Carolyn Grimm should be held jointly liable with William Grimm for the delinquent contributions, as an employer under ERISA or as an officer or director of Grimm Electric. In addition, because of its conclusion that the Grimms were not liable for delinquent contributions, the district court did not decide which projects performed by Grimm Electric's electricians were covered by the Letter of Assent-A, or which contribution rate should be applied to their work. Because the record evidence on these issues is incomplete or conflicting, these questions should be placed in issue on remand.

---

instant case, however, the employee benefit trust funds were mandatory subjects of bargaining provided for by the 1977–1979 agreement to which Grimm Electric expressly assented.