67 F.3d 301
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
MASONRY INSTITUTE, BRICKLAYERS LOCAL 21 PENSION FUND, and
Bricklayers Local 21 of Illinois Apprenticeship
and Training Program, Plaintiffs-Appellees,
v.
ESTATE OF Bernard McNEELA, Defendant-Appellant.
 No. 94-1617.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 15, 1994.
Decided Sept. 29, 1995.
 
 Before COFFEY, RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The Estate of Bernard McNeela[1] appeals the district court's grant of summary judgment to Local 21 Masonry Institute, Bricklayers Local 21 Pension Fund, and Illinois Apprenticeship and Training Program (the Funds) on the Funds' suit demanding an accounting to determine whether McNeela owes contributions to the Funds under a collective bargaining agreement (CBA). The Funds brought this action under Sec. 502(a)(3) and Sec. 502(g)(2) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1132(a)(3), 1132(g)(2), and Sec. 301(A) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. Sec. 185(a). Because we agree that McNeela is bound by the CBA, we affirm.
 
 I. Background
 
 2
 Bernard McNeela was the owner and operator of McNeela Construction. In 1983, McNeela signed a "Memorandum of Understanding" with the Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftsman (District Council). In the memorandum, McNeela recognized the District Council as the "exclusive collective bargaining agent for all Bricklayers, Stone Masons and Apprentices employed by [McNeela] for the purpose of establishing rates of pay, wages, fringe benefit contributions, hours of employment, and other terms and conditions of employment." The memorandum also stated that McNeela agreed to be bound by the "terms and conditions of employment" as set forth in bargaining agreements between the District Council and "one or more" of a number of listed associations of employers. Finally, the memorandum contained an "evergreen clause"[2] stating that
 
 
 3
 This agreement shall remain in effect and shall be governed by Association Agreements entered into in the future and covering future time periods unless and until ... either party giv[es] written notice of termination to the other not less than 60 and not more than 90 days prior to the termination date of the applicable Association Agreement, in which event this Agreement shall terminate on the last day of the then applicable Association Agreement. In the event no such timely notice is given, this Agreement shall remain in effect until terminated in accordance with its terms.
 
 
 4
 (emphasis added).
 
 
 5
 The Funds seek an accounting of benefits owed under CBAs covering the dates of January 1, 1991 to the present. Although a CBA signed in 1988 (1988 CBA) expired on May 31, 1990, a subsequent CBA (1990 CBA) covered the period of June 1, 1990 to May 31, 1993. Citing the evergreen clause in the 1983 agreement, the Funds argue that the terms of the 1990 CBA between the District Council and the associations of employers are binding on McNeela. McNeela claims that he did not assent to the terms of any CBA effective after May 31, 1990. The district court held that the evergreen clause bound McNeela to the terms of the 1990 CBA and granted summary judgment to the Funds.
 
 II. Discussion
 A. Summary Judgment
 
 6
 When a case turns on a question of contractual interpretation, summary judgment is appropriate if one party shows that its reading of the contract is correct and the other party's interpretation is "not even colorable" and thus creates no genuine issue of material fact. See Trnka v. Local Union No. 688, 30 F.3d 60, 61-62 (7th Cir.1994). Interpretation of an unambiguous contract is a question of law for the court to decide. Bechtold v. Physicians Health Plan of Northern Indiana, Inc., 19 F.3d 322, 325 (7th Cir.1994). Neither party argues that the Memorandum of Understanding is ambiguous or that extrinsic evidence is necessary to resolve the case.
 
 B. The Evergreen Clause
 
 7
 A contract containing an evergreen clause binds an employer to subsequent CBAs until the contract is properly terminated. United Mine Workers of America 1974 Pension v. Pittston Co., 984 F.2d 469 (D.C.Cir.) (coal companies that signed evergreen clause were bound to make contributions to funds under subsequent CBAs), cert. denied, 113 S.Ct. 3039, 3040 (1993); Local 257, International Brotherhood of Electrical Workers, AFL-CIO v. Grimm, 786 F.2d 342 (8th Cir.1986) (evergreen clause bound employer to terms of subsequent agreements between union and contractor's association); Board of Trustees of Local 41, International Brotherhood of Electrical Workers Health Fund v. Zacher, 771 F.Supp. 1323, 1328-30 (W.D.N.Y.1991) (Letter of Assent delegating bargaining authority "for all matters contained in or pertaining to the current approved Inside labor agreement" bound employer to terms of subsequent agreement); Trustees of the Carpenters Health and Welfare Trust Fund of South Florida v. Universal Construction Services, 695 F.Supp. 554 (S.D.Fla.1988) (memorandum agreement bound employer to terms of subsequent contract between unions and association; and employer demonstrated intent to be bound); Carpenters Local 1471 v. Bar-Con, Inc., 668 F.Supp. 560, 566 (S.D.Miss.1987) (Letter of Assent by employer agreeing to abide by terms of current CBA between union and association "binds signatories not only to the remainder of the term of the collective bargaining agreement then in existence, but also to successor agreements negotiated between" the union and the association); see also National Labor Relations Board v. Black, 709 F.2d 939 (5th Cir.1983) (unfair labor practice for employer that signed letter of assent not to honor terms of subsequent CBA between union and association). Thus, the evergreen clause in the Memorandum of Understanding bound McNeela to the terms of the District Council's agreements with the associations of employers until either McNeela or the District Council terminated the agreement. Neither McNeela nor the District Council ever gave written notice, as required by the Memorandum of Understanding, that they wished to terminate the agreement. Under the Memorandum of Understanding, McNeela was apparently bound to the terms of the 1990 CBA. McNeela argues, however, that although he did not give written notice, he effectively terminated the agreement by other means.
 
 C. Refusal to Sign the 1990 CBA
 
 8
 McNeela argues that his obligations under the Memorandum of Understanding ended when the 1988 CBA expired in 1990. In support of this claim, McNeela asserts that, when asked, he refused to sign a contract with the District Council covering the years 1991, 1992, and 1993. In response, the Funds argue that the District Council never received notice of McNeela's intention to terminate the Memorandum of Understanding. Moreover, the Funds stress that the Memorandum of Understanding requires timely, written notice of termination, which McNeela does not claim to have tendered to the union. McNeela argues that his refusal to sign the 1990 CBA constituted adequate notice. He reasons that by asking him to sign the 1990 CBA, the District Council implicitly recognized that the CBA would not be binding on him without his signature. Thus, he contends that his failure to sign the new agreement terminated his contractual relationship with the District Council.
 
 
 9
 McNeela's argument that his failure to sign the 1990 CBA negates his obligation under the Memorandum of Understanding misconstrues the purpose behind the evergreen clause. McNeela was not a direct signatory to the CBAs between the District Council and the associations. Rather, in the Memorandum of Understanding, he contracted with the District Council to be bound by the agreements between the union and the associations. In effect, McNeela delegated his bargaining authority to the associations (or more precisely, he relied on the bargaining power of the associations to protect his interests), and under the Memorandum of Understanding, this delegation was to continue until proper written notice was given to the union. The fact that McNeela himself was not a party to the 1990 CBA is thus irrelevant; as long as the District Council had an agreement with the associations, McNeela was bound to its terms. See Grimm, 786 F.2d at 344-45.[3] If McNeela's obligations to the District Council were terminated by his failure to sign the 1990 CBA, then "no need would exist for ... [the] termination provision" in the Memorandum of Understanding. Id. at 345. Thus, McNeela's failure to sign the 1990 CBA did not terminate his obligations under the Memorandum of Understanding.[4]
 
 D. Amendment 2 to the 1990 CBA
 
 10
 McNeela argues that Amendment 2 to the 1990 CBA altered his obligations under the Memorandum of Understanding. Amendment 2 states that if any individual employer signed a memorandum of understanding with the District Council and subsequently joined one of the associations of employers, the memorandum would be voided and superseded by the Joint Agreement between the associations and the District Council. However, McNeela's argument that Amendment 2 altered his obligations is not supported by the record. We have no evidence that McNeela joined an association, which is necessary for the Memorandum of Understanding to be terminated by Amendment 2.[5] Thus, McNeela continues to be bound by the Memorandum of Understanding.
 
 E. Mutuality
 
 11
 Finally, McNeela argues that holding him to the terms of the 1990 CBA would violate principles of mutuality. A contract violates the principle of mutuality if there is no reciprocity of obligation. See Zeyher v. S.S. & S. Manuf. Co., 319 F.2d 606, 607 (7th Cir.1963) (contract invalid under Indiana law for lack of certainty and mutuality). Even if this doctrine is viable,[6] McNeela and the District Council are mutually bound by the terms of the 1990 CBA. We have no evidence that the 1990 CBA is one-sided or that the District Council's obligation to McNeela is illusory.
 
 III. Conclusion
 
 12
 The evergreen clause in the Memorandum of Understanding binds McNeela to the terms of all subsequent CBAs between the District Council and the associations until proper notice of termination is given. McNeela never gave written notice to the District Council, and his failure to sign the 1990 CBA does not affect his obligations under the Memorandum of Understanding. In addition, we have no evidence that McNeela joined an association, which is necessary for amendment 2 to terminate the memorandum. Nor do we have evidence that the 1990 CBA is one-sided or that the District Council's obligations to McNeela are illusory. Thus, the Funds are entitled to an accounting of any obligations that McNeela may have under the 1990 CBA. The judgment of the district court is
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Bernard McNeela brought this appeal on his own behalf and then passed away while it was pending. We postponed making a final decision until it was determined whether McNeela's successor(s) in interest would continue to pursue the appeal. On June 2, 1995, pursuant to Fed.R.App.P. 43(a), McNeela's estate was substituted as the appellant in this case. For convenience, this order refers to McNeela's estate as "McNeela."
 
 
 [2]
 An "evergreen clause" or an "evergreen contract" "renews itself from year to year in lieu of notice by one of the parties to the contrary." Black's Law Dictionary, 6th ed. at 55 (West 1990)
 
 
 [3]
 Because the evergreen clause would automatically bind McNeela to subsequent CBAs, it is not entirely clear why the District Council asked McNeela to sign the 1990 CBA. The District Council does not offer an explanation, nor is one evident from the record. Perhaps the District Council would have preferred to have McNeela as a direct signatory to the 1990 CBA
 
 
 [4]
 In his reply brief, McNeela argues that by failing to sign the 1990 CBA, he withdrew from a multiemployer bargaining unit (MEBU) and thus had no further obligation to the District Council. Arguments first raised in a party's reply brief are waived. Brooks v. United States, 1995 WL 517119, * 5 (7th Cir. Aug. 2, 1995); United States v. Spaeni, 60 F.3d 313, 317 (7th Cir.1995). Moreover, an employer who (like McNeela) delegates his bargaining authority to an association is not a member of a MEBU. See National Labor Relations Board v. Hayden Electric, Inc., 693 F.2d 1358, 1364 (11th Cir.1982). Thus, even if McNeela's failure to sign the 1990 CBA would have been sufficient to constitute a withdrawal from a MEBU, this analogy is inapposite. The relevant question is whether McNeela properly terminated his obligations under the Memorandum of Understanding
 
 
 [5]
 McNeela asserts that he did not join the Masonry Contractors Association of Greater Chicago, one of the recognized associations
 
 
 [6]
 See Truck Insurance Exchange v. Ashland Oil, Inc., 951 F.2d 787, 790 (7th Cir.1992) ("Contracts that are 'illusory' in the sense of hopelessly or deceptively one-sided fail, if at all, on different grounds, such as fraud, unconscionability, or undue influence.")