**LOCAL UNION NO. 637, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff–Appellant,**

v.

**DAVIS H. ELLIOT COMPANY, INCORPORATED, Defendant– Appellee.**

No. 93–1300.

United States Court of Appeals, Fourth Circuit.

Argued July 13, 1993.

Decided Dec. 29, 1993.

Terry Russell Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC, argued (Martin J. Crane, Sherman, on brief), for plaintiff-appellant.

Bayard Easter Harris, The Center for Employment Law, P.C., Roanoke, VA, argued (Doug Henson, on brief), for defendant-appellee.

Before WILKINS, NIEMEYER and WILLIAMS, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

█ The deceptively simple question presented on this appeal is whether the court or the arbitrator should decide the question of whether a collective bargaining agreement entitles the union to invoke an interest arbitration clause. The district court held that the issue is one of arbitrability for judicial determination, and we affirm that conclusion.

### I

Davis H. Elliot Co., Inc., an electrical contracting firm in Roanoke, Virginia, has been for years a member of the National Electrical Contractors Association ("the National Association"), a trade association that negotiates collective bargaining agreements on behalf of authorizing members as one of its services. In 1974, Elliot authorized the National Association to act as Elliot's collective bargaining representative by executing a revocable letter of assent. On behalf of Elliot, the National Association negotiated and entered into collective bargaining agreements with Local 637, International Brotherhood of Electrical Workers ("IBEW"). The last such agreement, which is involved in this case, became effective on September 3, 1990, and expired by its terms on August 30, 1992.

On April 1, 1992, five months before the expiration of the agreement, Elliot revoked its letter of assent to the National Association, as it was contractually authorized to do, and notified Local 637 IBEW that it was terminating the collective bargaining agreement at the agreement's expiration date of August 30, 1992. On May 27, 1992, in response to the notice, Local 637 invited Elliot to engage in direct negotiations for a new agreement which would succeed the multiple-employer agreement.

By letters dated July 13 and July 17, 1992, both of which were sent less than 90 days before the termination of the existing collective bargaining agreement, Local 637 submitted a list of proposals, consisting of ½ pages of amendments to the existing agreement, for negotiation of an independent agreement with Elliot. The letters also stated that any of the issues left unresolved "must be submitted to the Council on Industrial Relations," as provided in the existing agreement. Finally, the letters stated that absent a response from Elliot on these issues, the union would "consider the issues deadlocked," rendering them ripe for adjudication by the Council on Industrial Relations.

The Council on Industrial Relations ("CIR") is a standing body created jointly by the National Association and the IBEW to adjudicate contractual disputes designated for arbitration in the collective bargaining agreements. CIR's membership consists of an equal number of representatives from management and from the union.

Elliot did not respond to the union's letters of July 13 and July 17. Rather, it advised the CIR that the CIR does not "possess the power to prescribe an agreement" for Elliot upon expiration of the current agreement. Nevertheless, the union presented its proposed new agreement with Elliot to the CIR, and the CIR proceeded to hear the matter. By order dated August 10, 1992, the CIR directed the union and Elliot to enter into a new one-year successor agreement that included the terms proposed by the union. The successor agreement was to expire on August 29, 1993. When Elliot received the order and a copy of the new agreement that the CIR directed Elliot to sign, Elliot refused to sign, claiming that the CIR "has no legal jurisdiction or power to impose this agreement on the parties."

Local 637 IBEW then filed this suit in the district court to enforce the CIR's award. On cross-motions for summary judgment, the district court refused to enforce the award,

concluding that since the union had not opened up the contract negotiations process within 90 days of the existing contract's expiration, as required by the terms of the contract, the disputes raised in the letters of July 13 and July 17 could not properly be submitted to arbitration. This appeal followed.

## II

Local 637 IBEW contends that the district court was obliged to enforce the arbitrator's award since the question of whether the arbitration clause was timely invoked was a procedural question to be decided by the arbitrator. Local 637 argues that procedural questions regarding the application of an arbitration clause must be left to the arbitrator, relying principally on *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). In *Wiley,* the question before the Court was whether a merger and a failure to follow procedural conditions relieved the successor corporation of obligations to arbitrate union grievances relating to seniority rights and wages that were affected by the merger. The collective bargaining agreement in *Wiley* had a broad arbitration clause which provided, "any differences, grievance or dispute between the Employer and the Union arising out of or relating to this agreement, or its interpretation or application, or enforcement" is subject to arbitration. 376 U.S. at 553, 84 S.Ct. at 916. The agreement also imposed conditions to arbitration, including a condition that any grievance be filed within four weeks of the occurrence. Holding that the arbitrator should resolve procedural defenses to grievances along with their merits, the Court explained the separation of issues for the court and for the arbitrator in the following manner:

> The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty. Thus, just as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori,* it cannot be compelled to arbitrate if an arbitration clause does not bind it at all.

\*   \*   \*   \*   \*   \*

Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, *"procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.*

376 U.S. at 547, 557, 84 S.Ct. at 913, 918 (emphasis added). Local 637 IBEW here contends that the issue in this case is likewise procedural and therefore falls under *Wiley.* The union argues also that the issue here is analogous to the untimely submission to arbitration of a grievance issue, which we have held previously is for the arbitrator to decide. *See Tobacco Workers International Union v. Lorillard Corp.,* 448 F.2d 949 (4th Cir.1971).

On the other hand, Elliot contends that the failure of the union to satisfy contractual conditions precedent goes beyond the scope of the arbitration clause, to the power of the arbitrator to act. Elliot has pointed out that no court has held that arbitrability is a question to be submitted to the arbitrator, relying particularly on *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), and *Sheet Metal Workers Int'l Ass'n, Local Union No. 150 v. Air Systems Engineering, Inc.,* 948 F.2d 1089 (9th Cir.1991). In *AT & T,* addressing the question of whether grievances relating to lay-offs that were prompted by reasons other than lack of work were to be arbitrated, the Supreme Court stated:

> It is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning layoffs predicated on a "lack of work" determination by the Company. If the court determines that the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement. It was for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration.

475 U.S. at 651, 106 S.Ct. at 1419 (emphasis added).

Thus, the question in this case boils down to the proper placement of the line of demarcation between the principles of *Wiley* (assigning procedural issues surrounding a grievance's resolution to the arbitrator) and *AT & T* (holding that the issue of arbitrability is a judicial question for the courts).

■ First, a review of some background principles is helpful in resolving the question. The union's suit was filed under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to enforce the arbitration award of the CIR allegedly entered pursuant to a collective bargaining agreement to which Elliot was a party. Because the right to compel arbitration is contractual and consensual, courts enforce arbitration of only those disputes to which the parties have previously agreed. *See Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). Stated otherwise, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418 (*quoting United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). But it is also firmly established that courts will broadly construe contractual provisions for arbitration because of the well-recognized benefits of peaceful resolution of labor disputes through arbitration. If it cannot be said "with positive assurance" that a dispute is excluded from arbitration by a contract's arbitration clause, the doubt should be resolved in favor of an interpretation that submits the dispute to arbitration. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. at 574, 582–85, 80 S.Ct. at 1347, 1352–54 (1960).

■ Since the question of whether the parties have agreed to submit a case to arbitration is one of contract interpretation, resolution of the question is a judicial matter for the court. Were arbitrators given the authority to decide their own jurisdiction, arbitration clauses would be far less popular. As the Court observed in *AT & T,*

> The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be "drastically reduced," however, if a labor arbitrator had the "power to determine his own jurisdiction. . . ."

475 U.S. at 651, 106 S.Ct. at 1419 (*quoting* Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1509 (1959)). Once the *court* defines the matters that the agreement between the parties commits to arbitration, then the procedural questions surrounding the matters may be resolved by the arbitrator along with the merits. *See Wiley, supra; Tobacco Workers, supra.* Thus, the scope of an arbitration clause defining the arbitrator's jurisdiction is a question for the court, but a subsequent defense to a particular dispute committed to the arbitrator, even if the defense defeats the right to arbitrate, is within the jurisdiction of the arbitrator.

We now turn our attention to locating the proper placement of the circumstances at issue here, guided by the principles of *AT & T* on the one side and *Wiley* on the other.

### III

Unlike the broad arbitration clauses construed in *Wiley*[1] and *AT & T*[2], which assigned to arbitration *all* disputes relating to the agreement or its interpretation, the arbitration clause here, section 1.02(d) of the agreement, designates for arbitration only "unresolved issues in negotiations" over the termination of or changes to the agreement

---

1. The collective bargaining agreement in *Wiley* provided for arbitration as a final stage of a grievance procedure, stating that arbitration is the "sole means of obtaining adjustment" of "any differences, grievance or dispute between the Employer and the Union *arising out of or relating to this agreement, or its interpretation or application, or enforcement."* *Wiley,* 376 U.S. at 553, 84 S.Ct. at 916 (emphasis added.).

2. The collective bargaining agreement in *AT & T* commits to arbitration "differences arising with respect to interpretation of this contract or the performance of any obligation hereunder." *AT & T,* 475 U.S. at 645, 106 S.Ct. at 1416.

that are proposed in the manner specified by the agreement.[3] "Unresolved issues" are created through the processes spelled out in sections 1.01 and 1.02, which are sections devoted principally to termination of the collective bargaining agreement, its renewal, and methods for making changes.

This *interest* arbitration provision in section 1.02(d), committing to arbitration unresolved issues of whether the agreement continues and under what terms, is to be distinguished from the arbitration provision for resolution of *grievance* disputes which is contained in section 1.08 and which is not applicable here. In *Elgin, J. & E.R. Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), the Supreme Court made a distinction between "new contract" or "interest" arbitration, relating "to disputes over the formation of collective agreements or efforts to secure them," and "rights" or "grievance" arbitration, involving a dispute about "the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case." *Id.* at 723, 65 S.Ct. at 1290. We adopted this distinction in *Cumberland Typographical Union No. 244 v. Times & Alleganian Co.,* 943 F.2d 401 (4th Cir.1991), where we held that " 'Rights' disputes are normally resolved through arbitration, while disputes concerning the terms of a future contract are to be resolved through collective bargaining negotiations." *Id.* at 406 n. 3. Traditional contract law principles dictate that issues relating to the existence of the agreement and its terms be resolved through noncompulsory, judicial procedure, since such issues often intermingle with questions about the arbitrator's jurisdiction. As already noted, "It is the *court's* duty to interpret the agreement and to determine *whether* the parties intended to arbitrate the [issues]." *AT & T,* 475 U.S. at 651, 106 S.Ct.

at 1420 (emphasis added). Grievance issues, on the other hand, involve interpretation of rights that have already accrued under the agreement, and do not require an examination of the existence of those issues under the agreement. Such issues may be more efficiently resolved through arbitration. These distinctions are helpful in understanding the point of difference between *Wiley* and *AT & T* and our holding in this case.

Moreover, while doubts about the scope of a broad provision committing to arbitration all disputes arising under an agreement should be resolved in favor of arbitration, *see Warrior,* 363 U.S. at 582, 80 S.Ct. at 1352, an interest arbitration provision which addresses limited questions about the existence of the agreement itself or its terms should not be interpreted with the same deference to arbitration. Rather, traditional principles of contract interpretation should apply to the interpretation of such interest arbitration clauses, since the issue of whether parties have agreed to arbitrate remains a judicial one.

We now apply these principles, interpreting the agreement before us in the context of the undisputed facts in the record, to determine whether "unresolved issues in negotiations" were created for adjudication by the CIR. Section 1.01 of the agreement provides that the collective bargaining agreement is renewed automatically on a yearly basis after its original expiration date "unless ... terminated in the way later provided herein." Section 1.02 provides that termination is effected by giving notice "at least 90 days prior to the anniversary date." Elliot invoked these provisions and provided approximately 150 days notice of termination, effective August 30, 1992.[4] Rather than simply continuing the existing contract for another year, however, Local 637 IBEW expressed interest

---

3. Section 1.02(d) provides:
   Unresolved issues in negotiations that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations, may be submitted jointly or unilaterally by the parties to this Agreement to the Council for adjudication prior to the anniversary date of the Agreement.

4. Because termination of the agreement is subjected by § 1.02(f) to the same procedures that

govern proposed changes, when the union stated in response to Elliot's termination that it wanted to enter into a direct agreement with Elliot, the union may have placed the question of *termination* at issue and effectively caused an automatic renewal for one year of the existing contract. Resolution of this question, however, is not presented because the parties agree that Elliot continued to abide by the terms of the current contract for the year that ended August 29, 1993.

in negotiating a *new and different* agreement with Elliot to succeed the existing multi-employer agreement, and for that purpose it proposed changes for inclusion into a new agreement. These changes, however, were sent to Elliot about 45 days before the agreement's expiration, which did not fulfill the agreement's condition that proposed changes be put on the table at least 90 days before expiration.

The agreement provides in section 1.01 that the agreement continues from year to year "unless *changed* ... in the way later provided herein" (emphasis added). Section 1.02(a) provides that a party desiring to *change* the agreement provide notice "*at least 90 days* prior to the anniversary date," and § 1.02(b) provides that the notice must contain the "*nature of the changes* desired" (emphasis added). If the parties cannot reach agreement on the proposed changes, the "*unresolved issues*" may be submitted for "adjudication" by the CIR. Thus the arbitration clause does not refer all contractual disputes to arbitration, but only those changes proposed before 90 days of the expiration date and on which no agreement through negotiation has been reached.

In this case, Local 637 did not put the issues on the table at least 90 days before termination, as was contractually specified, and therefore no negotiations ensued to create "unresolved issues." Issues that fail to qualify as "unresolved issues in negotiations" fall beyond the jurisdiction of the CIR by the terms of the collective bargaining agreement.

The failure of Local 637 to submit questions for renegotiation as timely required and to engage in the negotiations as provided by the contract, are not procedural conditions *to the arbitration,* but are substantive contract conditions to the establishment of "unresolved issues in negotiations." Only by establishing such unresolved issues as provided by contract, could there be a subject matter to arbitrate. There is no claim here that the submission to arbitration was untimely or that the procedures for arbitration were not complied with. Rather, the issue is whether the subject matter for the arbitrator was created under the contract. Because we find that there were no such "unresolved issues"

to arbitrate, we affirm the judgment of the district court.

*AFFIRMED.*