**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 26,
Plaintiff-Appellant,

v.                                                              No. 95-1683

ADVIN ELECTRIC, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-94-281-PJM)

Argued: April 4, 1996

Decided: October 16, 1996

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Hamilton and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** R. Richard Hopp, O'DONOGHUE & O'DONOGHUE,
Washington, D.C., for Appellant. Jana Howard Carey, VENABLE,
BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellee.
**ON BRIEF:** Brian A. Powers, Sally M. Tedrow, O'DONOGHUE &
O'DONOGHUE, Washington, D.C., for Appellant. Valerie Floyd
Portner, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore,
Maryland, for Appellee.

**OPINION**

NIEMEYER, Circuit Judge:

The International Brotherhood of Electrical Workers, Local 26, filed a grievance against AdVin Electric, Inc. under the arbitration clause of a 1993 collective bargaining agreement, contending that AdVin failed to comply with that agreement. The agreement had been negotiated between Local 26 and the National Electrical Contractors Association (the "Association"), of which AdVin had been a member. AdVin responded, claiming that it had withdrawn the Association's authority to negotiate on AdVin's behalf for the 1993 collective bargaining agreement. When AdVin refused to attend the arbitration, Local 26 obtained an arbitration award against AdVin and filed this action, under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, to enforce the award. On cross motions for summary judgment, the district court granted AdVin's motion, concluding that AdVin was not a party to the 1993 collective bargaining agreement because AdVin had effectively withdrawn the Association's authority to negotiate on AdVin's behalf. We agree and therefore affirm.

I

In 1988, AdVin, an electrical contractor, executed a"letter of assent" authorizing the Association to act as AdVin's collective bargaining representative. The letter provided that the authorization was to remain in effect "until terminated" by AdVin's giving written notice both to the Association and to Local 26 at least 150 days "prior to the then current anniversary date of the applicable approved labor agreement." Acting on behalf of AdVin and other electrical contractors who were members of the Association, the Association entered into a three-year collective bargaining agreement with Local 26, effective June 1, 1990, (the "1990 CBA"). The 1990 CBA provided that unless either party gave written notice 90 days before the "anniversary date" of May 31, 1993, the agreement would continue in force on an annual basis.

In July 1991, a little more than a year into the agreement, AdVin determined that for economic reasons it could not afford to remain in a relationship with the union. On July 11, 1991, it wrote a letter to

2

Local 26, with a copy to the Association, stating,"This will serve as official notice that AdVin Electric, Inc. will terminate its employer union membership status effective July 11, 1991." Both the Association and Local 26 wrote AdVin back, advising that it was bound by the collective bargaining agreement at least through May 31, 1993, the last day of the term of the 1990 CBA entered into by the Association on AdVin's behalf. In its letter to AdVin, the Association also alluded to AdVin's right to withdraw its authorization to the Association by giving notice at least 150 days prior to the anniversary date of the collective bargaining agreement, i.e. May 31, 1993. And in its letter, Local 26 referred AdVin to the collective bargaining agreement's termination provision which required notice of termination 90 days before May 31, 1993.

Accordingly, AdVin thereafter sought to end its union ties effective May 31, 1993. On November 4, 1992, it sent the Association a letter, with a copy to Local 26, stating:

> In accordance with the Letter of Assent between AdVin Electric, Inc. and [the Association], this letter is AdVin's formal notification to terminate AdVin's collective bargaining agreement with Local 26 I.B.E.W. upon its expiration on May 31, 1993.

And on the same day AdVin sent a letter to Local 26, with a copy to the Association, stating, "This letter is the formal notification of AdVin Electric, Inc. in accordance with AdVin's collective bargaining agreement with local 26 I.B.E.W., to terminate the agreement upon its expiration on May 31, 1993." Both letters were sent by certified mail, return receipt requested, at least 150 days before May 31, 1993.

As the end of the 1990 CBA term approached, Local 26 wrote AdVin a letter seeking to open one-on-one negotiations with AdVin. In the letter, sent April 6, 1993, the business manager of Local 26 wrote:

> I previously sent you a letter dated February 25, 1993, regarding opening contract negotiations with your company

3

since AdVin Electric, Inc. no longer wishes to be represented by [the Association].

As you know, [the collective bargaining agreement] expires May 31, 1993. With this thought in mind and valuable time slipping away, I request that the following dates be set aside so that we may begin negotiations immediately . . . .

It is in the best interest of all parties that we do not delay these important contract negotiations any longer since the arbitration clause in our agreement states that we must file for CIR by May 1, 1993, if necessary.

While AdVin did not refuse to meet with Local 26, it admonished the union by letter dated May 26, 1993, that AdVin had"previously timely informed you of our intent to terminate the current [collective bargaining agreement] upon [its] expiration date, and our withdrawal of any authority on the part of [the Association] to negotiate on our behalf for any new agreements." AdVin nevertheless offered to meet with union representatives so long as such meetings would not be construed as obligating AdVin to have "any continuing relationship with the Union after the expiration of the current[collective bargaining agreement]." The parties met a few times without reaching any agreement.

Local 26 and the Association negotiated a new three-year collective bargaining agreement effective June 1, 1993 (the "1993 CBA"). AdVin, however, did not consider itself a party to the 1993 CBA because it had withdrawn its assent to the Association and had notified Local 26 of its desire to terminate its union relationship upon expiration of the 1990 CBA bargaining agreement.

Several months into the 1993 CBA, when it became clear that AdVin was not operating under it, Local 26 filed a grievance under the 1993 CBA. The Local contended that AdVin's termination of its negotiating assent and its union relationship were not effective and, therefore, that AdVin was bound by the 1993 CBA negotiated by the Association. Local 26 explained its grievance as follows:

4

> [AdVin] failed to give timely and unambiguous notice to the Local and to [the Association] that it was withdrawing from the Letters of Assent. Having failed to give proper, timely notice to both the Local and [the Association], AdVin is bound to the current Agreements for their term.

Insisting that it was not a party to the 1993 CBA, AdVin refused to participate in the arbitration process. Local 26 proceeded to obtain an arbitration award against AdVin and, thereafter, brought this action to enforce the award under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

On cross motions for summary judgment, the district court concluded that AdVin had clearly and unequivocally given notice to Local 26 and to the Association that it did not wish to participate in a union relationship. Referring to Local 26's contention that AdVin's notice was ambiguous, the court stated,

> Any distinction between withdrawing from the contract . . . as opposed to withdrawing from the collective bargaining group is a nice, but frankly, totally unpersuasive argument. It is clear that the defendant wanted out from this relationship, period.
>
> * * *
>
> And if there were any doubt, it's clear that Local 26 itself acted as if they knew that AdVin was trying to opt out both of the agreement and membership in the multi-employer bargaining unit. That is absolutely clear.

The court therefore concluded that AdVin was not bound by the 1993 CBA and, to the extent that that agreement had a mandatory arbitration clause, it simply did not apply to AdVin. Accordingly, the court entered summary judgment in favor of AdVin.

On appeal, Local 26 argues that the district court erred in considering the "merits" of AdVin's claims. Rather, Local 26 argues, the district court should have determined the "straightforward question of

5

whether the dispute was encompassed by the [1993] Agreement's arbitration clause." Because the arbitration clause "clearly encompassed the parties' dispute over the alleged termination of the Letter of Assent," Local 26 asserts that the district court should have enforced the arbitration award against AdVin.

II

It is firmly set law that the obligation to arbitrate is a creature of contract, and a party cannot be required to submit to arbitration unless he has agreed to do so. See United Steel Workers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960); American Recovery Corp. v. Computerized Thermal Imaging, Inc., 1996 WL 495537 at *3 (4th Cir. Sept. 3, 1996); Local 637, IBEW v. Davis H. Elliot Co., 13 F.3d 129, 132 (4th Cir. 1993). Accordingly, the court decides as issues of contract law the threshold questions of whether a party is contractually bound to arbitrate and whether, if so bound, the provision's scope makes the issue in dispute arbitrable. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-47 (1964); Elliot, 13 F.3d at 132; Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir.), cert. denied , 508 U.S. 960 (1993).

While Local 26 does not dispute these fundamental legal principles, it argues that because AdVin's termination of its relationship with the Association was ineffective, the Association acted as AdVin's collective bargaining representative in entering into the 1993 CBA. And, it argues further, if the question of whether AdVin's withdrawal of assent is disputed, that subject falls within the scope of the 1993 CBA's arbitration clause. According to Local 26, the arbitrator and not the court therefore determines whether AdVin is bound by the 1993 agreement.

To reach its conclusions, Local 26 has reversed the necessary order of analysis. Before Local 26 can claim the benefit of the 1993 CBA's arbitration clause, it must establish that AdVin was a party to the collective bargaining agreement. While there is no dispute that AdVin and Local 26 were both parties to the 1990 CBA, Local 26 concedes that AdVin properly terminated that agreement. If that issue were disputed, Local 26 might have been able to argue that the 1990 CBA's arbitration clause covered the question of whether AdVin properly

6

invoked the 1990 CBA's termination provision. But no provision of the 1990 CBA survived May 31, 1993, and that agreement cannot now form the basis for this litigation. Indeed, Local 26 does not urge that it does. Rather, Local 26 filed the arbitration claim underlying this case under the 1993 CBA, contending that any dispute about its applicability was an issue for arbitration. Because Local 26 has invoked the arbitration clause of the 1993 CBA, we must decide whether AdVin was bound by that agreement's arbitration provision. As already noted, that question is one for the court to decide. Elliot, 13 F.3d at 132; Action Electric, Inc. v. Local 292, IBEW, 856 F.2d 1062, 1064 & n.1 (8th Cir. 1988).

The district court concluded as a matter of law that AdVin gave notice that it wanted to withdraw from its relationship with the Union and that, by giving notice, it effectively terminated both its representation agreement with the Association and the collective bargaining agreement with Local 26. Reviewing the district court's conclusion de novo, we agree that the record supports the court's conclusion.

The undisputed facts reveal that AdVin notified both the Association and Local 26 on July 11, 1991, that it wanted "to terminate its employer union membership status" effective immediately. When AdVin was informed that it could not do so before May 31, 1993, it sent letters both to the Association and Local 26 on November 4, 1992. In its letter to the Association, with a copy to Local 26, AdVin stated, "in accordance with the Letter of Assent . . . this letter is AdVin's formal notification to terminate . . . the collective bargaining agreement with Local 26, I.B.E.W. upon its expiration." (Emphasis added). This language is undoubtedly effective to terminate the Association's authority to bargain on AdVin's behalf. See NLRB v. Hayden Electric, Inc., 693 F.2d 1358, 1364 (11th Cir. 1982) (finding termination of letter of assent effective where an employer wrote "to advise, 150 days in advance, of [the company's] intention to exercise [its] option to cancel [its] contract with [a] local union"). Moreover, on the same day, AdVin wrote a separate letter to Local 26, with a copy to the Association, in which it stated it was terminating the 1990 CBA upon its expiration on May 31, 1993. Thus, in November 1992, Local 26 received two letters from AdVin, one addressed to the Association referencing its letter of assent and the other to the Union referencing the termination clause of the 1990 CBA.

7

Local 26 argues that the exchange of communications between AdVin, the Association, and Local 26 was "equivocal and ambiguous" and "squarely in dispute," thus precluding entry of summary judgment in AdVin's favor. The argument rests on AdVin's imprecise invocations of the two agreements to support its claim of ambiguity. While AdVin's references to the agreements were not specific, there can be no doubt that AdVin intended to take all steps necessary to end its union relationship, referring both to its letter of assent given to the Association and the 1990 CBA with the Union. According to the standards set down by the National Labor Relations Board in Retail Associates, Inc., 120 NLRB 388, 395 (1958), notice need only be "adequate." See also Action Electric, 856 F.2d at 1064-65; Hayden Electric, 693 F.2d at 1363-64. Furthermore, there should be no "barriers to withdrawal prior to bargaining." Charles D. Bonanno Linen Serv., Inc. v. NLRB, 454 U.S. 404, 412 (1982).

Were we left with any doubt that AdVin's notice to the Association and Local 26 was adequate as a matter of law, that doubt would be removed by Local 26's own interpretation of AdVin's letters. In April 1993, Local 26 wrote to AdVin inviting AdVin to engage in one-on-one negotiations for a new collective bargaining agreement, bypassing the traditional negotiations between Local 26 and the Association, "since AdVin Electric, Inc., no longer wishes to be represented by [the Association]." Thereafter the parties met more than once for that purpose. Local 26's attempt to negotiate directly with AdVin rather than through the Association does more than betray its knowledge of AdVin's withdrawal from the Association. It operates as an acquiescence in and a consent to AdVin's withdrawal of authority. See Hayden Electric, 693 F.2d at 1365. "Where a union expresses its willingness to meet and discuss terms peculiar to an individual employer's operation, and listen to counter proposals . . . such conduct evidences acquiescence in an otherwise untimely withdrawal." Id. at 1366 (quoting I.C. Refrigeration Service, 200 NLRB 687, 690 (1972)).

Because AdVin was not a party to the 1993 CBA, it was not bound by that agreement's arbitration clause. Accordingly, we affirm the judgment of the district court denying enforcement of the arbitration award.

AFFIRMED

8