[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14366

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 14, 2005
THOMAS K. KAHN
CLERK

NLRB No. 10-CA-33361

GEORGIA POWER COMPANY,

Petitioner-Cross-Respondent,

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL
UNION NO. 84,

Petitioner,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent-Cross-Petitioner.

_____

Petitions for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board

_____

**(October 14, 2005)**

Before BIRCH, HULL and BOWMAN*, Circuit Judges.

BOWMAN, Circuit Judge:

The National Labor Relations Board (Board) issued an order affirming an administrative law judge's (ALJ) decision that Georgia Power Company (GPC) violated the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1), (5) (2000), by failing to bargain with the International Brotherhood of Electrical Workers, Local Union No. 84 (IBEW), over a newly created Workplace Ethics Program (WEP) and by dealing directly with IBEW's bargaining unit employees over the WEP.[1] The Board reversed the ALJ's decision that GPC violated the NLRA by dealing directly with IBEW's bargaining unit employees over the creation of a Crew Leader Selection Committee (CLSC). GPC petitions for review of the Board's order, asking this Court to set aside the adverse rulings while enforcing the favorable ruling. IBEW also petitions for review of the Board's order, but asks for the opposite relief. The Board's General Counsel cross-applies for enforcement of the Board's entire order. We deny the petitions for review and grant the General Counsel's application for enforcement of the Board's order.

---

*Honorable Pasco Bowman, II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[1] Not relevant here, the Board also affirmed the ALJ's decision that GPC did not violate the NLRA, 29 U.S.C. § 158(a)(2) (2000), by dominating an employee organization in creating the WEP.

## I.

GPC, a distributor of utility services, and IBEW, the exclusive bargaining representative for some of GPC's employees (covered employees), have been parties to labor agreements for over fifty years. This case involves a Memorandum of Agreement (MOA) governing grievance procedures to resolve covered employees' complaints and a Memorandum of Understanding (MOU) governing how covered employees become crew leaders. Until 2001, GPC also provided its employees two vehicles to use to voice their concerns: the Equal Employment Opportunity (EEO) program, which focused on charges of discrimination; and the Corporate Concerns (CC) program, which dealt with employees' general concerns about such issues as discipline, discharge, or unfairness.

## A.

In 2000, GPC created five work groups consisting of covered and non-covered employees to investigate general areas of employee concern. Two work groups recommended improving the EEO and CC programs. In response, GPC created the WEP, which combined the EEO and CC programs. GPC created the WEP only after learning covered "employees did not feel that they were being represented properly and that they felt like if [GPC] improved the [CC] program

3

particularly, that that might be a better choice or a better route of dispute resolution." Tr. of NLRB Hearing at 136:2–6 (May 13, 2002). GPC did not bargain with IBEW over the creation of the WEP, but "made it quite clear that [the WEP] would not go anywhere near contract interpretations." Id. at 86:8–9. IBEW informed GPC that it could not support the WEP. After learning more about the WEP, IBEW asked GPC if the two sides could work something out regarding the WEP. GPC responded that, unless IBEW proposed a different offer, GPC unilaterally would implement the WEP. IBEW made no specific offers, but again stated it did not support the WEP.

The WEP includes a peer-review process in which panels of covered and non-covered employees review management decisions regarding employee concerns over such issues as discharge, discipline, or demotion. Covered employees are free to invoke the WEP process or the grievance procedures contained in the MOA. When a covered employee files a concern under the WEP, IBEW is not notified and does not represent its members in the WEP process. However, once a grievance is certified for arbitration, the WEP process yields to the arbitration proceedings.

In an e-mail message sent to all GPC employees on June 1, 2001, GPC's president announced the formation of the new WEP. In the e-mail, the president

4

stated it was critical for GPC to "do the best job possible in welcoming and resolving employee concerns," noting the WEP "is a 'best practices' approach that has been used successfully at other companies to improve trust and openness in the concerns process." E-mail Titled "Workplace Ethics announcement from David Ratcliffe" (June 1, 2001).

## B.

In the fall of 2001, some senior employees complained to GPC management that the crew leader selection process was unfair. In response, GPC appointed covered and non-covered employees to serve on the CLSC to find ways to improve the selection process. GPC's labor relations manager instructed the CLSC not to negotiate with IBEW or "even get into the subject matter of negotiations." Tr. of NLRB Hearing at 148:16–17 (May 13, 2002). When IBEW's representative asked to be a member of the CLSC, GPC's labor relations manager denied the request, stating the CLSC was only a committee to seek employee input to make better crew leader selections. GPC assured IBEW that, "if we decided that the input that [the CLSC] gave us was an area for negotiation, or if any changes were to be made," GPC would negotiate with IBEW. Id. at 150:17–19. After meeting twice, the CLSC recommended changes to the selection process. GPC has not

5

implemented any changes, assuring IBEW any changes would occur only through negotiation.

## II.

The Supreme Court "has emphasized often that the [Board] has the primary responsibility for developing and applying national labor policy." NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 786 (1990). "Because it is to the Board that Congress entrusted the task of 'applying the [NLRA]'s general prohibitory language in the light of the infinite combinations of events which might be charged as violative of its terms,' . . . that body, if it is to accomplish the task which Congress set for it, necessarily must have authority to formulate rules to fill the interstices of the broad statutory provisions." Beth Israel Hosp. v. NLRB, 437 U.S. 483, 500–01 (1978) (quoting Republic Aviation Corp. v. NLRB, 324 U.S. 793, 798 (1945)); see also NLRB v. Local Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 434 U.S. 335, 350 (1978) (noting that, when the Board's resolution of conflicting claims "represents a defensible construction" of the NLRA, the Board's decision "is entitled to considerable deference"). Thus, courts have a narrow role when reviewing Board decisions: "The rule which the Board adopts is judicially reviewable for consistency with the [NLRA], and for

6

rationality, but if it satisfies those criteria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, must be enforced." Beth Israel, 437 U.S. at 501; see also Curtin Matheson, 494 U.S. at 787 ("We will uphold a Board rule as long as it is rational and consistent with the Act, even if we would have formulated a different rule had we sat on the Board.") (citations omitted); 29 U.S.C. § 160(e) (2000) (stating the Board's findings "with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive").  Understanding our limited role, we ask whether the Board's decision is rational, consistent with the NLRA, and supported by substantial evidence.

## III.

The NLRA prohibits an employer from interfering with its employees' exercise of their NLRA rights and from refusing to bargain collectively with its employees' representatives.  29 U.S.C. § 158(a)(1), (5).  The duty to bargain collectively entails the mutual obligation of the employer and the employees' representative to meet and confer "with respect to wages, hours, and other terms and conditions of employment."  Id. § 158(d). When an employer bargains directly with covered employees over terms and conditions of employment, the employer

7

violates the NLRA because such direct dealing interferes with the employees' rights to bargain collectively through their designated representative. See id. § 158(a)(1), (5); Medo Photo Supply Corp. v. NLRB, 321 U.S. 678, 684 (1944) (stating "it is a violation of the essential principle of collective bargaining and an infringement of the [NLRA] for the employer to disregard the bargaining representative by negotiating with individual employees . . . with respect to wages, hours and working conditions").

## A.

GPC contends the Board erroneously concluded GPC violated the NLRA by unilaterally establishing the WEP without bargaining with IBEW and by dealing directly with covered employees over the WEP's design and implementation. We conclude the law and the record support the Board's decision.

It hardly can be doubted that the establishment of grievance procedures constitutes a mandatory subject of bargaining. See Hughes Tool Co. v. NLRB, 147 F.2d 69, 73 (5th Cir. 1945) ("We take it to be a proper matter for collective bargaining to establish an orderly and just method for presenting and adjusting grievances."). Similarly, the unilateral implementation of a program subject to mandatory bargaining generally will be considered an unlawful refusal to bargain.

See NLRB v. Katz, 369 U.S. 736, 743 (1962). The ALJ concluded, and the Board agreed, that the WEP "is a grievance procedure vehicle designed to provide employees with a different procedure for resolving distasteful managerial decisions without resort to [IBEW]." Georgia Power Co., 342 N.L.R.B. No. 18, at 10 (June 30, 2004) (ALJ's Decision). Because grievance procedures are mandatory subjects of bargaining, we ask whether substantial evidence supports the Board's decision that the WEP impacted grievance procedures. We conclude it does.

GPC's unilateral design and implementation of the WEP, with the assistance of covered employees and without IBEW input, stressed that covered employees could ignore the MOA's grievance procedures and pursue grievance-like concerns without IBEW's assistance. GPC created the WEP as an alternative, parallel program to the bargained-for grievance procedures to resolve workplace concerns. GPC promoted the WEP as a program that covered employees could—and even should—use to resolve their concerns over demotion, discharge or discipline by dealing with GPC. We cannot fault the Board for concluding GPC's unilateral approach to resolving these employee concerns implicated terms and conditions of employment such that bargaining was mandatory.

We also note it seems obvious that GPC would have to bargain with IBEW if it wanted to eliminate the MOA's grievance procedures. See, e.g., TruServ Corp.

9

v. NLRB, 254 F.3d 1105, 1119 (D.C. Cir. 2001) (holding that an employer "was not free to replace unilaterally the contractual grievance procedure"), cert. denied, 534 U.S. 1130 (2002). Thus, it was rational for the Board to conclude that the unilateral whittling away at grievance procedures by creating a parallel system like the WEP also impacted terms and conditions of employment.[2]

GPC also contends the Board erroneously decided that GPC dealt directly with covered employees, as opposed to IBEW, when designing and implementing the WEP. We disagree. GPC did not just unilaterally implement the WEP. Instead, GPC created work groups involving covered employees with the avowed purpose of improving the process of resolving employee concerns. Furthermore, covered employees are members of the review panel resolving employee concerns. GPC's design and implementation of the WEP, which provides a way of circumventing the MOA's grievance procedures, excised IBEW from the picture

---

[2]GPC argues that the Board erred by failing to conclude IBEW waived any right to bargain with GPC over the WEP because IBEW never requested bargaining. This waiver argument must be rejected for at least two reasons. First, GPC raised this argument for the first time before this Court, never once alluding to waiver before the ALJ or the Board. Thus, we have no jurisdiction to consider this waived argument. 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."); Purolator Armored, Inc. v. NLRB, 764 F.2d 1423, 1431 (11th Cir. 1985) (holding that the Court has no jurisdiction to consider claims not properly raised before the Board). Second, IBEW indicated its desire to discuss the WEP with GPC, which should have alerted GPC that IBEW wished to bargain over the WEP. See NLRB v. Fosdal, 367 F.2d 784, 788 (7th Cir. 1966) (stating a union sufficiently requests bargaining when "the employer understands that a demand is being made" through "clear implication") (internal citations and quotations omitted).

10

and went directly to covered employees to address terms and conditions of employment. See Allied-Signal, Inc., 307 N.L.R.B. 752, 753 (1992) (stating that direct dealing does not require actual bargaining with covered employees, but can include "an employer's direct solicitation of employee sentiment over working conditions [that] is likely to erode the Union's position as exclusive representative") (internal citation and quotation omitted).

In addition, the e-mail message sent by GPC's president communicated directly with the covered employees that GPC unilaterally implemented a procedure to "welcom[e] and resolv[e] employee concerns . . . to improve trust and openness in the concerns process." E-mail Titled "Workplace Ethics announcement from David Ratcliffe" (June 1, 2001). This e-mail message must be read in light of GPC's belief that covered "employees did not feel that they were being represented properly" and that the WEP might be "a better route of dispute resolution" than the IBEW-negotiated grievance procedures. Tr. of NLRB Hearing at 136:2–6 (May 13, 2002). With the permissible inference that GPC implemented the WEP to weaken covered employees' support for the IBEW-supported grievance procedures, the Board reasonably concluded that the president's e-mail message constituted direct dealing because it established or changed the terms and conditions of employment. See S. Cal. Gas Co., 316 N.L.R.B. 979, 982 (1995);

11

see also NLRB v. Triple A Fire Protection, Inc., 136 F.3d 727, 735 (11th Cir. 1998) (finding per se violation of the NLRA's prohibition against direct dealing where employer "deal[t] directly with employees outside the normal channels of collective bargaining" in an attempt "to dissuade employees from supporting the union and create incentives for them to abandon their support for the union"), cert. denied, 525 U.S. 1067 (1999).

## B.

IBEW, on the other hand, maintains that the Board erroneously reversed the ALJ's decision that GPC engaged in direct dealing in violation of the NLRA by establishing the CLSC. Although we recognize this is a close issue, as indicated by the two-to-one Board decision reversing the ALJ's decision, we conclude the Board's decision is rational and supported by substantial evidence.

In reversing the ALJ's finding that GPC violated the NLRA by dealing directly with covered employees by forming the CLSC, the Board stated the "critical point" is GPC "was developing a *management proposal* to present" to IBEW. Georgia Power Co., 342 N.L.R.B. No. 18, at 2 (June 30, 2004). The Board's finding is supported by the record and is the critical point on this issue. GPC specifically instructed the CLSC not to negotiate any changes or even discuss

12

negotiations, and GPC assured IBEW no changes would be made to the MOU or to the crew leader selection process without bargaining. In essence, the Board found that GPC simply used the CLSC as a device for obtaining employee input to assist GPC in formulating bargaining proposals without dishonoring its obligation to bargain with IBEW.[3] The Board was well within its authority to conclude this activity did not constitute direct dealing. See Permanente Med. Group, Inc., 332 N.L.R.B. 1143, 1144 (2000) (holding that an "employer, in formulating its proposals for bargaining, can consult with a very important resource–its own employees," especially when the employer makes it clear the consultations "would ultimately yield only a proposal to be presented to the Unions for bargaining"); E. I. du Pont de Nemours & Co., 311 N.L.R.B. 893, 896 (1993) (holding that an employer's use of employee "brainstorming" sessions did not constitute unlawful direct dealing where the employer "made clear to the employees that it recognized the Union's role and that bargainable issues should be handled only by the Union").

The key distinction between GPC's conduct involving the WEP and its conduct involving the CLSC is the Board's finding that GPC simply was seeking employee input on the crew leader selection process and that it would make changes only after bargaining with IBEW. In the Board's view, GPC made it

---

[3]In point of fact, GPC neither made any changes in the crew leader selection process nor submitted any proposal for such changes to IBEW.

abundantly clear it had no such intention regarding the WEP; instead, it dealt with covered employees—and excluded IBEW—to make the employees' requested changes to assuage the employees' concerns. The Board's finding in this regard was supported by substantial evidence.

## IV.

For the reasons discussed, we **DENY** GPC's and IBEW's petitions for review and GRANT the General Counsel's application for enforcement of the Board's order.