[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13132

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 18, 2008
THOMAS K. KAHN
CLERK

NLRB No. 10-CA-35458

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

ROME ELECTRICAL SYSTEMS, INC.,

Respondent.

_____

Petition for Review of a Decision of the
National Labor Relations Board

_____

**(July 18, 2008)**

Before TJOFLAT and MARCUS, Circuit Judges, and VINSON,[*] District Judge.

PER CURIAM:

_____

[*]Honorable C. Roger Vinson, Senior United States District Judge for the Northern District of Florida, sitting by designation.

This case is before us on an application to enforce an order of the National Labor Relations Board ("the Board"). The Board held in its order that the Respondent, Rome Electrical Systems, Inc., did not give timely notice of its intent to withdraw from the International Brotherhood of Electrical Workers ("IBEW" or "the union") and the Atlanta Electrical Contractors Association ("AECA"). The Respondent was thus found to have violated Section 8(a)(5) of the National Labor Relations Act ("the Act"), which makes it an unfair labor practice for an employer to refuse to bargain collectively with the representatives of its employees. *See* 29 U.S.C. § 158(a)(5). The Respondent contends here, as it did before the Board, that IBEW and AECA are estopped from arguing that its withdrawal was untimely.

## I. BACKGROUND

IBEW is an electrical industry labor union. AECA is an Atlanta-based trade association which, *inter alia*, represents electrical construction employers in collective bargaining in the state of Georgia. The Respondent is a small family business engaged as an electrical contractor in the building and construction industry. It is owned and operated by Danny and Ruby Bollen, and, at all times relevant, it employed four electricians who worked in and around Rome, Georgia. It appears that Rome is much smaller and in a different economic market than Atlanta.

In or about December 1989, while working on a union site, Ruby Bollen signed a "Letter of Assent-A," which authorized AECA to be the Respondent's collective bargaining representative "for all matters contained in or pertaining to the current and any subsequently approved labor agreement between [AECA] and [IBEW]." The Respondent was not then --- nor did it later become --- an actual member of AECA. The letter of assent contained an automatic-renewal provision (a so-called "evergreen clause"), which provided:

> This authorization . . . shall remain in effect until terminated by the undersigned employer giving *written notice* to [AECA] *and* to [IBEW] *at least one hundred fifty (150) days* prior to the then current anniversary date of the applicable approved labor agreement.

(Emphasis added). As the above emphasized language indicates, if the Respondent desired to withdraw AECA's collective bargaining authority, it was required under the letter of assent to give 150 days written notice to both AECA and the union.

After signing the letter of assent, the Respondent was covered by a series of collective bargaining agreements that AECA negotiated with IBEW on its behalf. The pertinent agreements are: (i) a 3-year contract, effective from September 1, 2000, through August 31, 2003, and (ii) a 1-year extension of that contract, effective from September 1, 2003, through August 31, 2004 ("the CBA"). At the heart of this dispute is an alleged conflict created by the evergreen clause in the

letter of assent and a separate evergreen clause in the CBA. Specifically, Section

1.02(a) of the CBA provided:

> Either party or an Employer withdrawing representation from the
> Chapter or not represented by the Chapter, desiring to change or
> terminate this Agreement must provide written notification at least 90
> days prior to the expiration date of the Agreement or any anniversary
> date occurring thereafter.[1]

On September 28, 2003, the Respondent wrote to IBEW that it was going to

terminate its affiliation with the union "as a Signatory Contractor" on November 1,

2003. This letter was sent only to IBEA; not to AECA. On October 21, 2003,

IBEW's business manager, Lonnie Plott, responded that "[u]nder the terms of the

[CBA], the September 28, 2003 notice was not timely. Pursuant to Section 102(a),

your firm should have given at least 90 days notice prior to the expiration date of

the agreement for termination." The Respondent wrote back to IBEW, rescinded

its notice, and stated its intent to remain with the union as a signatory contractor.[2]

---

[1] The Board explained in its order that the notice language in Section 1.02(a) of the CBA was different from the notice language in prior labor contracts. The Board further explained that while it was well-settled law that withdrawal of bargaining authority under a letter of assent was "an action distinct from" terminating those prior contracts, it was an issue of first impression whether the recent version of Section 1.02(a) superceded or merged with the letter of assent, which would mean that the two actions were not distinct. In other words, the Respondent was "an Employer withdrawing representation from [AECA] or not represented by [AECA], desiring to change or terminate this agreement," and only required to give at least 90 days notice under the CBA. As will be shown, this argument has not been properly raised on appeal and, even if it had been properly raised, it would still fail.

[2] The record reflects that only AECA and IBEW were signatory parties to the CBA.

On May 27, 2004 --- which was 97 days before expiration of the one-year extension of the CBA --- the Respondent wrote to both IBEW *and* AECA and stated its intent to terminate its affiliation with the union *and* withdraw from AECA on August 31, 2004. The Respondent asserts that this action was taken due to economic necessity, and each of its four electrician employees signed a petition asking to be relieved of any union obligations. By letter of June 1, 2004, however, AECA informed the Respondent that "Atlanta Electrical Contractors Association is a voluntary association of which you are not a member" and, therefore, the Respondent's relationship with AECA was "governed by the Letter of Assent signed by your Company." According to AECA, the withdrawal notice was untimely under the letter of assent because written notice was required "at least one hundred fifty (150) days prior to the then current anniversary of the applicable approved labor agreement." AECA explained that the 90-day notice provision in the CBA applied to the termination of that particular labor agreement.

The Respondent honored the CBA until August 31, 2004, at which point it withdrew from AECA; attempted to bargain with IBEW on an individual basis; and unilaterally altered its employees' terms and conditions of employment, including changes to pay rates and contributions to IBEW's fringe benefit funds. On September 1, 2004, AECA and IBEW signed a 3-year extension of the CBA.

5

IBEW filed charges with the Board, seeking to keep the Respondent bound by the CBA and subsequent extension and to have it pay benefit contributions in accordance therewith. The Respondent protested the charges, arguing merger and estoppel. It also argued that its first notice of withdrawal from the union (which was sent to IBEW in September 2003 and subsequently rescinded) gave IBEW and AECA adequate and timely notice of its intent to withdraw. A three-member panel of the Board ruled in favor of the union and AECA.

Specifically, with respect to the Respondent's estoppel argument, the Board explained that there were two separate and distinct matters to be "borne in mind," to wit: "the contract between the Respondent and the Union, and the agency relationship between the Respondent and the AECA. The former had a 90-day cancellation provision, and the latter had a 150-day cancellation provision." The Board noted that the Respondent's letter of September 2003, "reasonably read, referred only to the contract. It spoke of a termination of its affiliation with the Union as a signatory contractor. Further, the letter was sent only to the Union, not to the AECA." These facts, according to the Board, reasonably implied that "only the contract was involved;" and since IBEW's response dated October 21 likewise referred only to the CBA, "it was unreasonable and incorrect for the Respondent to treat the union's letter of October 21 as an indication that the 90-day period

6

applied to the agency relationship between the Respondent and AECA." Thus,

> given the imprecision of the Respondent's own 2003
> notice, it would be highly unfair to read the statements in
> Plott's letter . . . as referring to the required notice period
> for terminating AECA's agency. Moreover, as the
> General Counsel points out, Plott's statements were
> accurate. It would therefore be even less fair to treat the
> Plott letter as an affirmative representation, on which the
> Respondent reasonably could have relied, that the notice
> period for terminating the agency was 90 rather than 150
> days.

The Board now seeks to have its order enforced.

## II. STANDARD OF REVIEW

We have jurisdiction under 29 U.S.C. § 160(e) to review and enforce orders issued by the Board, but our role in this context is a "narrow" and "limited" one. *See, e.g., Georgia Power Co. v. NLRB*, 427 F.3d 1354, 1357-58 (11th Cir. 2005); *accord NLRB v. Hayden Elec., Inc.*, 693 F.2d 1358, 1362 n.4 (11th Cir. 1982) (recognizing that there is "limited judicial review" of orders issued by the Board and that courts should be "slow to overturn" them). "Traditionally, we accord considerable deference to the Board's expertise in applying [the Act] to the labor controversies that come before it." *Visiting Nurse Health System, Inc. v. NLRB*, 108 F.3d 1358, 1360 (11th Cir. 1997). We will sustain the Board's decision if it is "rational, consistent with [the Act], and supported by substantial evidence."

*Georgia Power, supra*, 427 F.3d at 1357-58; *see also Int'l Bhd. of Boilermakers v. NLRB*, 127 F.3d 1300, 1306 (11th Cir. 1997).

## III. DISCUSSION

At the outset, we recognize that the "Letter of Assent-A" and the CBA are two very distinct documents that address different subject matters and serve different purposes. The letter of assent "is the standard form used by [IBEW] for the delegation of bargaining rights by employers." *Local 257, IBEW v. Grimm*, 786 F.2d 342, 344 (8th Cir. 1986). Several courts, including this one, have noted that under the terms of the same or substantially similar letters of assent, an employer seeking to reclaim its bargaining authority must give written notice to the union *and* to the bargaining unit to whom the authority was given at least 150 days before the then current anniversary date of the labor agreement. *Id.* at 346; *see also Hayden, supra*, 693 F.2d at 1363 & n.6. In the absence of timely and proper notice, the delegation of bargaining authority will continue. *See NLRB v. Black*, 709 F.2d 939, 941 (5th Cir. 1983) (the failure to timely withdraw authority under the Letter of Assent-A bound employer to subsequent agreement); *Grimm, supra,* 786 F.2d at 345 ("employer's assignment of bargaining authority under the Letter of Assent-A is an ongoing delegation, ending only on formal termination"). This result only makes sense. Because multi-employer bargaining units like AECA

8

"are creatures of mutual consent," the ability to withdraw from such a unit is necessarily "limited by the agreement of the parties." *See Sheet Metal Workers Int'l Assoc., Local 104 v. Simpson Sheet Metal, Inc.*, 954 F.2d 554, 555 (9th Cir. 1992). Thus, to be effective, "withdrawal must be carried out *as specified in the agreement*" of the parties. *See id.* (emphasis added) (citing cases); *see also, e.g., Grimm, supra,* 786 F.2d at 345-46 (termination of letter of assent requires strict compliance with the terms set out in that document); *NLRB v. Hartman*, 774 F.2d 1376, 1384 (9th Cir. 1985) (withdrawal from bargaining unit was timely where the withdrawal notice was sent to association "within the time period set forth in the contract"); *Black*, *supra,* 709 F.2d at 941 (order of the Board enforced where "the Company failed to provide the requisite notice to withdraw its designation of NECA as its bargaining representative" 150 days before the agreement expired); *Hayden, supra*, 693 F.2d at 1363-65 (employer may withdraw bargaining authority "for any reason prior to the date set for renegotiation of an existing contract [if] adequate written notice" is given under the contract; it must "timely withdraw . . . in accordance with the terms of the letters of assent"); *Nelson Elec. v. NLRB*, 638 F.2d 965, 967-68 (6th Cir. 1981) (employer may withdraw from bargaining unit "only at an appropriate time" as set forth in letter of assent, that is, "150 days prior to the current anniversary date of the agreement"). *Cf. Haas Elec., Inc. v. NLRB,*

299 F.3d 23, 27 (1st Cir. 2002) ("[A] stated intent to withdraw from multiemployer bargaining is effective only if it is both timely and unequivocal.").

The CBA, by contrast, establishes the terms and conditions of employment, such as union wages, fringe benefits, and hours. The 90-day notice period contained in Section 1.02(a) of the CBA governs the act of changing or terminating the CBA itself --- not the separate and distinct act of withdrawing AECA's bargaining authority. As the Board noted in its order, Section 1.02(a) does not refer to, or make any mention of, how an employer may withdraw representation from AECA, and it presumably would have done so if the CBA were intended to govern that issue. Indeed, it is notable that Section 1.02(a) is satisfied by 90 days notice to the union alone. If it were intended to apply to the withdrawal of AECA's agency authority, one would reasonably expect that it would have required notice to AECA as well. The 90-day notice provision in the CBA was obviously not intended to apply to the withdrawal of bargaining authority from AECA.

Therefore, in order to withdraw from AECA, the Respondent was required to give 150 days notice under the letter of assent, even though there was a separate 90 day notice provision in the CBA. *See, e.g.*, *Sheet Metal Worker, Int'l Ass'n , Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 427 n.9 (6th

10

Cir. 2001) (employer's attempt to withdraw from CBA was ineffective because it "did not give proper notice to the Union and the Association at least 150 days" in advance as required by the letter of assent, notwithstanding that there was a separate 90 day notice provision in the CBA); *IBEW, Local 26 v. AdVin Electric, Inc.*, 98 F.3d 161, 162-64 (4th Cir. 1996) (applying letter of assent's 150-day period to determine the timeliness of employer's withdrawal, while noting the separate 90-day period for contract termination in the CBA).

The Respondent does not appear to dispute that its actions --- withdrawing from AECA, attempting to directly bargain with the union individually, and changing the terms and conditions of its workers' employment --- were improper *if* its withdrawal was untimely. Nor does it dispute that it gave only 97 days notice to AECA and the union. The Respondent contends, however, that IBEW and AECA should be estopped from contending that its notice was untimely because IBEW gave "written representation and directive" that in order to terminate the CBA it need only give 90 days notice in accordance with Section 1.02(a). Because estoppel is the only defense properly raised by the Respondent, resolution of this case depends on whether estoppel is available on the facts presented.[3]

---

[3] The Respondent only raises the estoppel argument in its brief, but, during the course of presenting that argument, it states in passing that it also "renews the *defenses* it raised in the Board case." *See* Resp. Brief at 9 (emphasis added). To the extent that this single statement is

11

"Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984). To be invoked, it must be shown that the person against whom it is asserted made a "definite misrepresentation of fact," that was detrimentally relied upon and caused another to change position, and such reliance "must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler, supra,* 467 U.S. at 59. The doctrine is based on the maxim that "no man may take advantage of his own wrong." *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 232, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959). This presupposes, therefore, that the party to be estopped acted intentionally or, at the very least, with knowledge that his actions were wrong. *Cf. National Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc.*, 929 F.2d 1558, 1572 (11th Cir. 1991) (explaining that the elements of estoppel include that the party to be estopped "misrepresented material facts" even though he was "aware of the true facts"),

---

intended to put the merger and "timely notice" issues before the court, it is plainly insufficient. *See*, *e.g., Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned."); *see also Access Now, Inc. v. Southwest Airlines, Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (issues on appeal "should be specifically and clearly identified in the brief;" they must be "plainly and prominently" indicated; and if an argument is not "fully briefed," then "evaluating its merits would be improper") (citation and some quotation marks omitted). In any event, those arguments are without merit, as fully discussed above.

12

*abrogated on other grounds by, Geissal v. Moore Medical Corp.*, 524 U.S. 74, 118 S. Ct. 1869, 141 L. Ed. 2d 64 (1998).

Preliminarily, the letter upon which the Respondent bases its estoppel claim came from IBEW, *not* AECA. The Respondent has not explained why AECA is responsible for IBEW's letter, nor has it identified any alleged misrepresentation by AECA. Regardless, estoppel is unavailable here because what IBEW advised the Respondent in October 2003 was not a "definite misrepresentation of fact," but rather it was a true statement and was appropriate under the circumstances. The Respondent indicated in its September 2003 letter that it wanted to withdraw "as a Signatory Contractor," and the letter was sent to the union directly. There was no mention of AECA or of its existing agency relationship. Reasonably interpreted, therefore, the Respondent was attempting to withdraw only from the CBA. Under the terms of that agreement, the Respondent was required to give the union at least 90 days notice, which it plainly did not do in its letter of September 28, 2003. The Board explained that because the statement from IBEW was true and accurate based on the wording of the specific agreement issue, it would be unfair "to treat the [IBEW] letter as an affirmative representation, on which the Respondent reasonably could have relied, that the notice period for terminating the agency was 90 rather than 150 days." The Board thus concluded that estoppel could not lie,

13

and this conclusion is reasonable and supported by substantial evidence.

Moreover, assuming *arguendo* that there was a definite misrepresentation of fact, there is no evidence (nor does the Respondent even suggest) that IBEW acted intentionally or with knowledge that what it told the Respondent was wrong or misleading. Again, the Respondent sent its original notice only to the union, and it spoke of withdrawing as a "signatory contractor." It did not mention or reference AECA or its bargaining authority. IBEW responded and cited the 90-day provision in the CBA. The ambiguity in both letters is perhaps unfortunate, but, as indicated by the Board, it would be unfair to allow the Respondent to capitalize on its own imprecision. And in any event, estoppel is available only where the party seeking relief did not know, *nor could have reasonably known*, of the "true facts." Here, the Respondent could have learned of the 150-day notice requirement merely by reviewing the letter of assent that it signed and, presumably, still had in its possession. Therefore, the Board did not err in rejecting the Respondent's estoppel defense.

## IV. CONCLUSION

For the foregoing reasons, the order is

**ENFORCED**